■ In the Matter of the STATE OF NEW YORK by LOUIS J. LEFKOWITZ, Attorney-General of the State of New York, Respondent, v. JACK PARKER, Doing Business as PARMAN COMPANY, et al., Appellants.— Order and judgment (one paper), Supreme Court, New York County, entered on July 30, 1971, reversed, on the law, without costs and without disbursements, and respondents' cross motion to dismiss the petition granted. Although the public interest and equitable considerations favor the construction sought of section 7–103 of the General Obligations Law by the Attorney-General, the plain wording of the statute precludes such a construction. The courts may not enlarge the wording of a statute even in favor of what may be deemed an equitable construction. (See Tompkins v. Hunter, 149 N. Y. 117; Bailey v. Upstate Loan Co., 205 Misc. 535, 537.) Courts " are not privileged, by judicial construction, to legislate " (Matter of Metropolitan Life Ins. Co. v. Boland, 281 N. Y. 357, 361) and we have been recently reminded that the " court may not substitute itself for the Legislature merely because the Legislature has failed to act " (Matter of Spillane v. Katz, 25 N Y 2d 34, 37; see, also, People v. Kupprat, 6 N Y 2d 88, 90). Plainly, in its wording, the amendment to the statute was not framed to modify existing lease provisions. The words used to express the applicability of the statute (" Whenever ", " receiving " and " shall   *   *   *   deposit ") speak of future transactions. If the Legislature had intended a retroactive application of the particular amendment, it would have been a simple matter to have so provided and we may assume that it would have done so. (See e.g. General Obligations Law, § 7–105.) " The general rule is that statutes are to be construed as prospective only.   *   *   *   It takes a clear expression of the legislative purpose to justify a retroactive application ". (Jacobus v. Colgate, 217 N. Y. 235, 240. See, also, Matter of Container Co. [Corsi], 298 N. Y. 277; Waddey v. Waddey, 290 N. Y. 251, 254; De Kosenko v. Brandt, 31 A D 2d 612.) Certainly, for the purpose of giving the statute a retroactive application, we may not rely on evidence of post-enactment statements of the sponsor of the bill amending the statute or of the post-enactment opinion of private counsel. (See Matter of Delmar Box Co. [Aetna Ins. Co.], 309 N. Y. 60, 67.) This statute does not effect a mere procedural change justifying an exception to the general rule limiting a statute to a prospective application. " Statutes are generally to be construed as prospective only, even if remedial, where a new right is established " (Lewittes & Sons v. Perlow, 254 App. Div. 94, 95). (See, also, Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443, 453.) Notwithstanding the amendment of the statute is generally to be

limited to a prospective application, it may be that the statute properly applies to cover security deposits carried over for a renewal term. However, we do not reach the question because the Attorney-General has failed to plead or properly establish specific violations of the statute in this respect. And, finally, it should be noted that, contrary to the position of the Attorney-General, some of us conclude that, on the basis of the present record, neither subdivision 12 of section 63 of the Executive Law nor section 349 of the General Business Law confers standing upon him to maintain this action. (See *Matter of State of New York* v. *Parkchester Apts. Co.*, 61 Misc 2d 1020, 1026–1027, affd. 34 A D 2d 1106, affd. on opinion of Special Term, 28 N Y 2d 842.) Concur — Kupferman, McNally and Eager, JJ.; McNally and Kupferman, JJ., each concur in a separate memorandum, and Nunez, J. P., and Tilzer, J., each dissent in a separate memorandum, as follows: McNally, J. (concurring). I concur in the result solely on the ground that subdivision 2-a of section 7–103 of the General Obligations Law is inapplicable to tenancies, original or renewed, prior to September 1, 1970. Deposits of security in respect of tenancies or renewals thereof commencing on or subsequent thereto are, in my opinion, within the ambit of the said statute. Kupferman, J. (concurring) : I concur in the concurring opinion of McNally, J. I agree with the dissent that the Attorney-General has standing to bring this action and in the commendation contained therein with respect thereto. Nunez, J. P. (dissenting). The majority recognizes that public interest and equitable considerations favor the construction of section 7–103 of the General Obligations Law sought by the Attorney-General. I would add that the conduct of the appellants-landlords in keeping the sum of approximately $1,000,000 belonging to their tenants in a noninterest bearing account is not only contrary to the plain intendment of section 7–103 as amended by chapter 1009 of the Laws of 1970, but in addition clashes with fundamental concepts of the obligations of a fiduciary and I can find no possible justification for it. Section 7–103 of the General Obligations Law immediately prior to its 1970 amendment (eff. Sept. 1, 1970) provided in part: " 1. Whenever money shall be deposited  *  *  *  as security  *  *  *  such money  *  *  * shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same ". The 1970 amendment reads in part: " 2-a. Whenever the money so deposited or advanced is for the rental of property containing six or more family dwelling units, the person receiving the same shall, subject to the provisions of this section, deposit it in an interest bearing account in a banking organization which account shall earn interest at a rate which shall be the prevailing rate earned by other such deposits made with banking organizations in such area." The synopsis annexed to the bill before it became law reads in part (N. Y. Legis. Annual, 1970, p. 301) : " This bill, recommended by the Attorney General, amends Section 7–103 of the General Obligations Law by making it mandatory that money deposited under a contract for the use or rental of real property as security be *deposited* in an interest-bearing account in a banking organization." (Italics mine.) At the time of the signing of the bill, the Governor said in his message of approval (May 20, 1970) : " The bill, effective September 1, 1970, will require the landlord of every apartment house with six or more apartments to place *any* security deposits made by his tenants in an interest-bearing account ". (Italics mine.) (N. Y. Legis. Annual, 1970, p. 538.) The memorandum of the majority seeks to justify its ruling by attempting to show that the Legislature did not intend retroactive application of the amendment and cites General Construction Law

to support its position. In so doing, my distinguished colleagues have overlooked completely the fact that the amendment was enacted in May and that it did not take effect until more than three months thereafter. There is nothing retrospective about the amendment. It was purposely made effective three months hence to afford landlords then holding security deposits time to transfer the tenants' money into interest bearing accounts. The money so held by them never belonged to the landlords. They had no property interest in it. They could not commingle it with their own funds. It remained the property of the tenants. The statute in question was designed to compel the landlords to deposit the tenants' money on September 1, 1970 (three months after enactment) in interest bearing accounts for the benefit of the tenants instead of keeping it in noninterest accounts for the landlords' benefit. Appellants seek to thwart the will of the Legislature and the State's public policy and continue business as usual, i.e., continue to use the tenants' money for the landlords' benefit. We know that the vast majority of apartments in the City of New York were under rent control when the amendment was enacted. Clearly, the Legislature sought to provide a remedy to the hundreds of thousands of tenants whose money was being held by the landlords. Appellants concede that they hold these funds in noninterest bearing accounts in order to maintain compensating balances. This, of course, in these times of tight money markets provides a windfall to the landlords of sizeable proportions. In this one case alone, the landlord would be required to have approximately $1,000,000 of *its own money* on deposit as a compensating balance. We should not resort to the art of rhetoric but should be quick to aid the accomplishment of the end for which the statute was designed. It would have been a simple matter for the Legislature to say that only money deposited on or after September 1, 1970 was to be deposited in an interest bearing account. But instead it provided that security money must be deposited in interest bearing accounts " whenever " the money was so deposited. " Whenever" does not speak only of the future. It includes past, present and future. It means " at any time" or "no matter when" or " whatever time " (*Hobby* v. *Hodges,* 215 F. 2d 754). We should look for the meaning of the statute not in any single section, but in all the parts together and in their relation to the end in view. The Legislature attempted to end the landlords' option to keep the tenants' money in noninterest bearing accounts for the landlords' benefit. That this was the remedy sought to be achieved there can be no question. The laudable purposes and ends sought to be achieved are more important to the meaning than any rule which grammar or formal logic may lay down. The Attorney-General in my opinion has standing to bring this action under the General Obligations Law as well as the Executive Law. Certainly a representative action on behalf of such tenants can be maintained and this action, although brought by the Attorney-General, is in effect one on behalf of a representative class, i.e., the tenants-depositors of security funds. The Attorney-General should be commended for his attempt to enforce the State's public policy and protect the public interest. For all of the foregoing reasons, and those stated by Justice Lane in his well-reasoned opinion at Special Term, I would affirm the order appealed from. Tilzer, J. (dissenting). I dissent and vote to affirm on the opinion of Mr. Justice Lane at Special Term and I also concur in the dissenting memorandum of Nunez, J. [67 Misc 2d 36.]