**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Plaintiff,**

v.

**Louis J. LEFKOWITZ, as Attorney General of the State of New York, and Malcolm Wilson, as Governor of the State of New York, Defendants.**

No. 74 Civ. 4293.

United States District Court,
S. D. New York,
Civil Division.

Nov. 7, 1974.

Cadwalader, Wickersham & Taft by John J. Walsh, Dean J. Landau, Peter G. Bergmann, New York City, of counsel, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of N. Y., New York City, by Stanley L. Kantor, Asst. Atty. Gen., of counsel, for defendants.

WHITMAN KNAPP, District Judge.

Plaintiff, the Federal National Mortgage Association (FNMA), has moved pursuant to 28 U.S.C. §§ 2281 and 2284 for the convening of a three-judge court to hear the above-entitled matter. In this action, plaintiff seeks a preliminary and permanent injunction restraining the enforcement, operation or execution of a recently enacted New York State law—Chapter 119 of the Laws of 1974 (codified as Section 14–b of the Banking Law, McKinney's Consol.Law, c. 2, and Section 5–601 of the General Obligations Law, McKinney's Consol.Laws, c. 24–A,) —on the ground that the statute is unconstitutional. As party defendants the complaint names the Attorney General and the Governor of the State.

■ Chapter 119 requires mortgage investing institutions, such as FNMA, to pay interest of at least two percent on "escrow accounts". Plaintiff contends that as applied to FNMA, Chapter 119 is unconstitutional in several respects: (1) insofar as it requires FNMA to pay interest on "escrow accounts", it improperly regulates and burdens the operations of a federal instrumentality in violation of Article VI of the Constitution; (2) insofar as it requires FNMA to pay interest on such accounts established pursuant to contracts entered into prior to April 1, 1974—all of which do not by their terms require such payments—it violates the Contract Clause of the Constitution; (3) insofar as it requires FNMA to pay interest on such accounts under mortgage contracts which contain no terms requiring the payment of interest, but exempts from such requirement all mortgage contracts entered into prior to April 1, 1974 which expressly provide that no such interest shall be paid, it constitutes invidious discrimination and denies plaintiff equal protection of the laws in violation of the Fourteenth Amendment; and (4) insofar as Section 10.2(c)(1) of the General Rules and Regulations of the New York State Banking Board requires FNMA to pay two percent interest on escrow funds received under terms of mortgage contracts dated after April 1, 1974, but which are held by servicers rather than FNMA, it deprives FNMA of an exemption conferred by Section 14–b(4)(iii) of the New York State Banking Law, and violates the Fourteenth Amendment Due Process Clause.

There can be no doubt that the complaint and the constitutional issues it raises fulfill the requirements for convening a three-judge court as set out in

Idlewild Bon Voyage Liquor Corp. v. Epstein (1962) 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 and in Goosby v. Osser (1973) 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36. Indeed, the defendants do not at all claim that the constitutional issues involved are insubstantial. The defendants, however, do oppose the convening of the three-judge court—and have moved for dismissal of the complaint—on the ground that they are not proper parties to this action.

I. *Motion to Dismiss as to the Attorney General*

The touchstone in any analysis of whether a particular state officer is a proper defendant in a suit to enjoin the enforcement, operation or execution of a state statute is the landmark case of Ex Parte Young (1908) 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714. In holding that the federal court had jurisdiction to enjoin a state officer from enforcing a state statute, the Court stated:

"In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

"It has not, however, been held that it was necessary that such duty should be declared in the same act which is to be enforced. * * * The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specifically created by the act itself, is not material so long as it exists." 209 U.S. at 157, 28 S.Ct. at 453.

■ Thus, it seems clear that in order to be a proper party the Attorney General must have some connection with

the enforcement of Chapter 119. We find no merit in most of the bases put forward by plaintiff as grounds for establishing the attorney general's status as a party.[1]

■ However, we do find that such status is established pursuant to New York Executive Law § 63(12). That section provides:

"Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate *persistent* fraud or *illegality* in the carrying on, conducting or transaction of business, the attorney general may apply . . . for an order enjoining the continuance of such business activity." (emphasis supplied)

Thus, the Attorney General can affirmatively seek an injunction whenever a person engages in *repeated* illegal acts or otherwise demonstrates *persistent* illegality in the carrying on, conducting or transaction of business. If FNMA fails to comply with the provisions of Chapter 119, it would be engaging in such repeated and persistent violations of a statute. Chapter 119 places on plaintiff a continuing obligation to pay interest on its "escrow accounts". It should be noted that FNMA estimates that it holds about $5.6 million in "escrow accounts" established under 13,990 FHA-insured or VA guaranteed pre-August 10, 1970 mortgages, all secured by property in New York State. Since these mortgages have an average life of about twelve years, FNMA's liability—if the rate set by the banking board were only two percent—would be $112,000 per year, or over $1.3 million during the twelve year period. Failure to make such annual payments would clearly amount to the type of persistent, illegality which the State Attorney General could attempt to enjoin under § 63(12). Thus, the requirement of Ex Parte Young, *supra*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714—that there exist some connection with the enforcement of Chapter

1. Standing cannot be justified in this case either under New York Executive Law § 71, McKinney's Consol.Laws, c. 18, or under § 63(1) of the Executive Law.

119 by virtue of the office held by the party defendant—is met.

The Attorney General, in pressing his assertion that he lacks standing to enforce Chapter 119, relies heavily on Lefkowitz v. Parker (1972) 30 N.Y.2d 964, 335 N.Y.S.2d 827, 287 N.E.2d 618. In that case, the Attorney General had initiated suit pursuant to § 63(12) of the Executive Law to compel defendants engaged in the rental of housing accommodations to place security deposits of their tenants, which were received prior to September 1, 1970, in an interest-bearing bank account. The suit was based on an amendment to § 7–103 of the General Obligations Law, effective September 1, 1970, which provided in essence that security moneys received by the lessors of certain apartment units were to be deposited in interest-bearing accounts for the benefit of tenants. The defendants maintained that § 7–103 of the G.O.L. did not apply to moneys received before the effective date of the amendment. They did not challenge the validity of the statute as to deposits received after September 1. When the defendants failed to put the pre-September deposits in an interest-bearing account, the Attorney General brought suit, contending that such failure demonstrated persistent illegality within the purview and intent of § 63(12).

In a cryptic one-paragraph opinion [which relied on Matter of State of New York v. Parkchester Apts. Co. (1971) 28 N.Y.2d 842, 322 N.Y.S.2d 74, 270 N. E.2d 900] the Court of Appeals affirmed an Appellate Division decision which had reversed the trial court's decision in favor of the Attorney General. See, Lefkowitz v. Parker, 38 A.D.2d 542, 327 N.Y.S.2d 277, 67 Misc.2d 36, 323 N.Y.S. 2d 473. The affirmance was based ex-

plicitly "on the sole ground that the Attorney-General is without standing to maintain this proceeding under section 63 (subd. 12) of the Executive Law, Consol.Laws, c. 18." Lefkowitz v. Parker, *supra*, 30 N.Y.2d 964, 335 N.Y.S.2d 827, 287 N.E.2d 618.

Thus, based on *Parker*, the Attorney General argues that since he could not enforce rights stemming from a statute concerning security deposits involving private parties, he would not have enforcement authority in this suit which involves an analogous statute.

We must disagree with the Attorney General's interpretation of the *Parker* case. From a careful reading of the dissenting opinion as well as the two lower court opinions, it appears that the question upon which the decision turned was the narrow one whether the particular defendants then before the court had been engaged in "persistent" illegality.[2] The negative answer to that question— as applied to defendants who conceded the application of the statute to their general activities, but merely challenged its allegedly retroactive application— would not seem here determinative. Here the plaintiff, by bringing this action, has announced its intention to defy the statute in its entirety and utterly to ignore its mandate. Surely such defiance, if carried out, would constitute *persistent* conduct sufficient to trigger the Attorney General's § 63(12) obligation to enforce the law. *Cf.* Lefkowitz v. E. F. G. Baby Products Co. Inc. (3rd Dept., 1973) 40 A.D.2d 364, 340 N.Y.S. 2d 39.

## II. *Motion to Dismiss as to the Governor*

The Governor moves to dismiss because he has no specific enforcement

---

2. The record of the *Parker* case at the Court of Appeals indicates that the landlords explicitly contended that there was lacking the requisite conduct which demonstrated persistent fraud or illegality. Point One of their brief was as follows:

"Section 63(12) of the Executive Law empowers the Attorney General to combat consumer frauds of a repetitious and persistent nature; it does not and was not intended to confer upon him the authority to compel the transfer of monies from a non-interest bearing trust account—even if such transfer is required by statute."

authority with respect to Chapter 119. As stated above, a state officer is a proper defendant in a suit to enjoin the enforcement of a state statute only if he has "some connection with the enforcement of the act." Ex parte Young, *supra*, 209 U.S. 123, 28 S.Ct. 441.

The Governor of New York is charged by the state constitution with the duty to "take care that the laws are faithfully executed." N.Y.Const. Art. 4, § 3. As was decided in Socialist Workers Party v. Rockefeller (S.D.N.Y.1970) 314 F. Supp. 984, 988 n. 7 (three judge court), aff'd, 400 U.S. 806, 91 S.Ct. 65, 27 L. Ed.2d 38, and Johnson v. Rockefeller (S.D.N.Y.1973) (Lasker, J.) 58 F.R.D. 42, this constitutional mandate, without more, provides a sufficient connection with the enforcement of the statute to make the Governor a proper defendant.[3]

Accordingly, defendants' motions to dismiss are denied, and plaintiff's motion for convening a three-judge district court is granted.

So ordered.

---

3. See also. Committee for Public Education & Religious Liberty v. Rockefeller (S.D.N.Y.1971) 322 F.Supp. 678, where Judge Lasker, while recognizing that the Governor could be a proper party, dismissed the complaint in the exercise of discretion. He found that full relief could be obtained against other named defendants in that case. Here, since the Attorney General is challenging this court's jurisdiction, it might well be prejudicial to the plaintiff to dismiss this action as to the Governor.