ASSOCIATION OF AMERICAN MEDI-
CAL COLLEGES, Plaintiff,

v.

Hugh L. CAREY, Individually, and as Gov-
ernor; Theodore M. Black, Individually,
and as Chancellor, Board of Regents of
the University of the State of New
York; Willard A. Genrich, Individually,
and as Vice Chancellor, Board of Re-
gents of the University of the State of
New York; Kenneth B. Clark, Individu-
ally, and as Member, Board of Regents
of the University of the State of New
York; Harold E. Newcomb, Individually,
and as Member, Board of Regents of the
University of the State of New York;
Emlyn I. Griffith, Individually, and as
Member, Board of Regents of the Uni-
versity of the State of New York; Mary
Alice Kendall, Individually, and as Mem-
ber, Board of Regents of the University
of the State of New York; Jorge L.
Batista, Individually, and as Member,
Board of Regents of the University of
the State of New York; Louis E. Yav-
ner, Individually, and as Member, Board
of Regents of the University of the
State of New York; Laura Bradley Cho-
dos, Individually, and as Member, Board
of Regents of the University of the
State of New York; Martin C. Barell,
Individually, and as Member, Board of
Regents of the University of the State
of New York; Joseph R. Bongiorno, In-
dividually, and as Member, Board of Re-
gents of the University of the State of
New York; Louise P. Matteoni, Individ-
ually, and as Member, Board of Regents
of the University of the State of New
York; J. Edward Meyer, Individually,
and as Member, Board of Regents of the
University of the State of New York;
Arlene B. Reed-Delaney, Individually,
and as Member, Board of Regents of the
University of the State of New York; R.
Carlos Carballada, Individually, and as
Member, Board of Regents of the Uni-
versity of the State of New York; Gor-
don M. Ambach, Individually, and as
Commissioner of Education, University
of the State of New York, and Robert
Abrams, Individually and as Attorney
General, Defendants.

Civ. A. No. 79–CV–730.

United States District Court,
N. D. New York.

Jan. 22, 1980.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

In this action for declaratory and injunctive relief, plaintiff, Association of American Medical Colleges, challenges the legality and constitutionality of certain provisions of the New York Standardized Testing Act, Article 7–A of the New York Education Law, as they apply to its Medical College Admission Test ("MCAT") and to unpublished studies, evaluations and reports pertaining to the MCAT. The lawsuit is presently before the Court on plaintiff's motion for a preliminary injunction.[1]

Plaintiff is a non-profit educational association whose members comprise 125 United States Schools of Medicine, 418 teaching hospitals, 68 academic societies and over 1,700 individuals.

Defendant, Hugh L. Carey, is the Governor of the State of New York, and is being sued both individually and in his capacity as Governor.

Defendants, Black, Genrich, Clark, Newcomb, Griffith, Kendall, Batista, Yavner, Chodos, Barell, Bongiorno, Matteoni, Meyer, Reed-Delaney and Caraballada, are members of the Board of Regents of the University of the State of New York and are defendants in this action both individually and in their official capacity.[2]

Defendant, Gordon M. Ambach, is the Commissioner of Education for the State of New York and is named as a defendant both individually and in his official capacity.

Defendant, Robert Abrams, is the Attorney General for the State of New York and

DeGraff, Foy, Conway, Holt-Harris & Mealey, Albany, N. Y., Fulbright & Jaworski, Washington, D. C., for plaintiff; Carroll J. Mealey, Albany, N. Y., Carl W. Vogt, Joyce E. Reback, Washington, D. C., of counsel.

Robert Abrams, Atty. Gen. of the State of New York, Albany, N. Y., pro se and for all named defendants other than Bongiorno, Meyer, and Newcomb, individually & as members of the Board of Regents; Stanley Fishman, Maurice K. Peaslee, Asst. Attys. Gen., Albany, N. Y., of counsel.

---

1. Plaintiff's request for a temporary restraining order was denied at the January 7, 1980, argument on the preliminary injunction motion. The application was denied for failure by plaintiff to demonstrate the possibility of harm from enforcement of the Testing Act during the period for which a temporary restraining order would be effective.

   Argument on plaintiff's request for a temporary restraining order had originally been scheduled for December 28, 1979, but was adjourned by stipulation of the parties whereby defendants agreed not to enforce §§ 341 and 342 of the Act prior to January 7, 1980.

2. At oral argument on the motion, defendants' counsel indicated that named defendants Batista, Bongiorno and Meyer had not been served. Affidavits of service filed with the Court, however, show service on both Batista and Meyer. An affidavit filed by a United States Marshall on December 28, 1979, indicates that although several attempts at service were made on Bongiorno, none were successful, and he has not been served.

named as a defendant individually and as Attorney General.

Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1343(3). Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

## BACKGROUND

On July 13, 1979, Governor Carey signed into Law Article 7–A of the Education Law, popularly referred to as the "Truth in Testing" Law. (N.Y.Ed. Law §§ 340 *et seq.*) Effective January 1, 1980, the Law applies to "any test that is given at the expense of the test subject and designed for use in the process of selection for post-secondary or professional school admissions." [N.Y.Ed.Law § 340(1)]. The MCAT given by plaintiff is specifically included under the Law. [§ 340(1)].

In addition to provisions which set forth various notice requirements (§ 343) and requirements for disclosure of test results by test agencies (§ 344), the Law imposes certain obligations on test agencies with regard to disclosure of studies, background

3. N.Y. Education Law § 341 provides that:
   1. Whenever any test agency prepares, causes to have prepared or provides the data which are used in any study, evaluation or statistical report pertaining to a test, such study, evaluation or report shall be filed with the commissioner.
   2. If any reports or other documents submitted pursuant to this section contains information identifiable with any individual test subject, such information shall be deleted or obliterated prior to submission.
   3. All data, reports or other documents submitted pursuant to this section shall be public records.

4. The full text of Ed.Law § 342 reads as follows:
   1. Within thirty days after the results of any standardized test are released, the test agency shall file or cause to be filed in the office of the commissioner:
      a. a copy of all test questions used in calculating the test subject's raw score; b. the corresponding acceptable answers to those questions; and c. all rules for transferring raw scores into those scores reported to the test subject together with an explanation of such rules.
   2. After the test has been filed with the commissioner, and upon the request of the test subject, the test agency shall send to the test subject: a. a copy of the test questions used in

reports and statistical data pertaining to the tests (§ 341)[3] and of the contents of the tests themselves (§ 342).[4] It is these last two provisions which plaintiff finds unacceptable.

Plaintiff alleges the advancement of medical education and health care in the United States as its sole reason for existence. In furtherance of this purpose plaintiff has, for almost fifty years, sponsored a testing program for medical school applicants. This program includes the development and administration of the MCAT.[5]

In connection with its sponsorship of the MCAT, plaintiff also prepares or causes to be prepared, on an ongoing basis, confidential unpublished studies, evaluations and reports pertaining to the MCAT. These include studies of the performance of graduates of particular undergraduate schools and reports consisting of evaluations of test subject's performance on individual questions for use in developing new questions. Both of these types of studies are prepared on a confidential basis.

   determining the subject's raw score; b. the subject's individual answer sheet together with a copy of the correct answer sheet to the same test with questions counting toward the subject's raw score so marked; and c. a statement of the raw score used to calculate the scores already sent to the subject, provided that such request has been made within ninety days of the release of the test score to the test subject. The agency may charge a nominal fee for sending out such information, not to exceed the direct cost of providing the information.
   3. This section shall not apply to College Board Achievement Tests or GRE Advanced Tests.
   4. Documents submitted to the commissioner pursuant to this section shall be public records.

5. In April of 1977, plaintiff began administering a newly developed and allegedly improved MCAT. The new MCAT "consists of four sets of test questions which permit assessment in the following areas: (a) Biology; (b) Chemistry; (c) Physics; (d) Science Problems; (e) Skills Analysis: Reading; and (f) Skills Analysis: Quantitative." Affidavit of James B. Erdmann, Ph.D., Director of the Division of Educational Measurement and Research, Paragraph 4 (Exh. B to plaintiff's memorandum in support of the motion).

Detailed security procedures govern all phases of development of the MCAT, including test book assembly, printing and distribution. Beginning with the April 1978 MCAT, plaintiff has registered every test form with the Register of Copyright in conformity with the deposit procedures set forth at 37 C.F.R. § 202.20(c)(2)(vi).[6]

In 1979, the MCAT was administered four times, on consecutive Saturdays and Sundays in the Spring and Fall at approximately 450 test centers throughout the world, including 26 in the State of New York. The test was taken by approximately 48,000 individuals, 5,000 of whom took the test in New York State. Plaintiff has indicated that a similar schedule had been planned for 1980. Plaintiff has made clear that it does not intend to administer the MCAT in New York State in 1980 if forced to comply with Sections 341 and 342 of the Testing Act.[7]

### DISCUSSION

In seeking to enjoin enforcement of Sections 341 and 342 of the "Truth in Testing" Law, plaintiff alleges that the Act violates the federal Copyright Act, and furthermore, that it is, in fact, preempted by the Copyright Act. Plaintiff also raises consti-

tutional issues under both the United States and New York State Constitutions, alleging specifically a denial of due process and equal protection rights.

Claiming that it will suffer irreparable harm if forced to comply with the challenged provisions, plaintiff asks the Court to grant a preliminary injunction, enjoining enforcement of Sections 341 and 342 pending a determination on the merits.

Opposing the motion, defendants raise threshold jurisdictional questions concerning applicability of the Eleventh Amendment as a bar to this action, ripeness and whether proper defendants have been named in the action. In addition, defendants allege laches on the part of plaintiff in commencing this action, which according to defendants precludes issuance of a preliminary injunction.[8]

*Jurisdiction*

A.

■ Defendants, citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) and *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), assert that the Eleventh Amendment to the Constitution bars this action against the State officials named as defendants.[9]

---

**6.** The MCAT is a secure test as defined at 37 C.F.R. § 202.20(b)(4) as:

"a nonmarketed test administered under supervision at specified [test] centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration. For these purposes a test is not marketed if copies are not sold but it is distributed and used in such manner that ownership and control of copies remains with the test sponsor or publisher."

37 C.F.R. § 202.20(c)(2)(vi) provides that:

"[i]n the case of tests, and answer material for tests, published separately from other literary works, the deposit of one complete copy will suffice in lieu of two copies. In the case of any secure test the Copyright Office will return the deposit to the applicant promptly after examination: *Provided,* that sufficient portions, description or the like are retained so as to constitute a sufficient archival record of the deposit."

**7.** Upon consideration of plaintiff's position regarding the potential for destruction of the validity of the MCAT under the Law, the Court is convinced that plaintiff will so act. It should

be noted in this regard that plaintiff does not seek to avoid enforcement of the entire Act but rather two sections only.

**8.** Laches may be found in equitable actions upon a showing of unreasonable delay in bringing an action with resulting undue prejudice to the defendant. See *R. Dakin & Co. v. A & L Novelty Co., Inc.,* 444 F.Supp. 1080, 1084 (E.D. N.Y.1978).

In the present action, although there is no doubt that plaintiff was aware of enactment of the Act in July 1979 and did not commence this action until November of 1979, there is no indication that plaintiff's delay was unreasonable, in light of evidence indicating attempts at negotiating changes in the Law which continued without success into November. Furthermore, it is questionable whether prejudice could be found in light of the fact that there is still a tremendous amount of controversy over the Law and amendments to the Law including one which would postpone the effective date of the statute, have already been introduced.

**9.** In *Edelman v. Jordan, supra,* an action against the Director of the Illinois Department

The Eleventh Amendment provides that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or Citizens or subjects of any Foreign State."

The principle of sovereign immunity embodied in the Amendment has been construed to extend to suits by private persons against State officials as well, when the action seeks to "impose a liability which must be paid from public funds in the state treasury . . . ," (*Edelman v. Jordan, supra,* 415 U.S. at 663, 94 S.Ct. at 1356) and such actions have consistently been barred.

Defendants' argument fails to recognize, however, that there has traditionally been a distinction made between suits against State officials in their official capacity which could result in liability to the State treasury, and those seeking only declaratory and injunctive relief against the officials. In fact, the latter has been the traditional means of challenging the constitutionality of a State enactment.

In the landmark decision of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court recognized the distinction, holding that a suit for declaratory and prospective injunctive relief could be maintained by a private party against a State official responsible for enforcement of an allegedly unconstitutional enactment.[10]

Plaintiff, in this action for declaratory and injunctive relief, has not overstepped the bounds of *Ex parte Young, supra,* and that being the case, the Eleventh Amendment does not serve as a bar to the present action.

### B.

■ Defendants' claim that plaintiff has commenced this action prematurely is likewise without merit. Defendants' position, in opposing this motion, is that since none of the defendants has as yet threatened plaintiff with enforcement of the Testing Law, that the complaint is fatally defective, and that injunctive relief is clearly not warranted at this time.[11]

This position, however, flies in the face of well established judicial precedent which holds that a party need not await the occurrence of a threatened injury which will result from enforcement of a statute under attack before being allowed to seek preventive relief. *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Commonwealth of Pennsylvania v. West Virginia,* 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923). Furthermore, the Supreme Court has found it to be "irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974).

There is no question but that plaintiff will be affected by the Testing Law if it continues to offer the MCAT in the State of New York, since as previously indicated,

of Public Aid, plaintiffs sought and were denied, on the basis of the Eleventh Amendment, retroactive recovery of public assistance benefits wrongfully withheld. In *Alabama v. Pugh, supra,* the Supreme Court held that the Eleventh Amendment barred an action against the State and its Board of Corrections, even though injunctive relief was involved. The action was allowed to stand as against the individual prison officials, however. Both cases are easily distinguishable from the present since in *Edelman* money damages were sought, and in *Alabama* the State itself was made a party.

**10.** This principle has been reaffirmed repeatedly by the Supreme Court and followed innumerable times in the lower courts. *Cf. Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). See also *Hansbury v. Regents of Univ. of Cal.,* 596 F.2d 944 (10th Cir. 1979); *Trotman v. Palisades Interstate Park Com'n.,* 557 F.2d 35 (2d Cir. 1977); *Allah v. Com'r. of Dept. of Correctional Services,* 448 F.Supp. 1123 (N.D.N.Y.1978).

Recently, in *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978), the Supreme Court was asked to overrule *Ex parte Young, supra,* and declined to do so.

**11.** Under the United States Constitution, Art. 3, § 2, the jurisdiction of the federal courts is limited to actual "cases or controversies." Defendants argue that since there has been no threat of enforcement, there is no controversy.

§ 340(1) explicitly includes the MCAT as a "standardized test" subject to the Act. There being nothing indefinite with regard to the Act's application as to plaintiff, the Court clearly has before it a controversy which is ripe for determination.[12]

### C.

■ Defendants' final jurisdictional challenge involves an assertion that the proper parties are not now before this Court. In this regard, defendants contend that the Governor and the Attorney General have no statutory authority to enforce the Education Law and are, therefore, improper parties to the proceeding.[13]

In determining whether a particular State official is a proper party in an action to enjoin enforcement of a State law, the Court looks again to *Ex parte Young, supra,* in which the Court stated that:

"[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party. It has not, however, been held that it was necessary that such duty should be declared in the same act which is to be enforced." 209 U.S. at 157, 28 S.Ct. at 453.

It appears clear that in order for the Governor and the Attorney General to be named as defendants in this action, some connection with the enforcement of Sections 341 and 342 must be demonstrated.

Sufficient connection is found for the Governor in the New York State Constitution, Art. 4, § 3 in which the Governor is charged with the duty to "take care that the laws are faithfully executed." This mandate has, in many other instances been found to provide the necessary basis[14] and the Court can see no reason why that should not be the case here. *Cf. Federal National Mortgage Ass'n v. Lefkowitz,* 383 F.Supp. 1294 (S.D.N.Y.1974); *Socialist Workers Party v. Rockefeller,* 314 F.Supp. 984 (S.D.N.Y.1970) aff'd 400 U.S. 806, 91 S.Ct. 65, 27 L.Ed.2d 38 (1970).

The Court also finds that the Attorney General has been properly named as a defendant in this action. Defendants argue that the Attorney General has no express authority to enforce the Education Law, thereby making him an improper party. However, the duties of the Attorney General, which are set forth in the Executive Law § 63, include the duty to:

"(1) [p]rosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state, or of any

---

**12.** Defendants' reliance upon *Eccles v. Peoples Bank,* 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1947) is completely misplaced since in that action, there was not only no threat of enforcement but an expression of intent on the part of the defendant that there would be no such attempt. Defendants herein have expressed no intent to decline enforcement of the law.

**13.** Defendants also claim that this action cannot go forward without the presence of the Board of Regents as a named defendant. The Court disagrees. Each member of the Board has been named as a defendant in both his individual capacity and as a Board Member. All but one of the Members has been served at this time, and the Board is clearly before the Court.

In any event, the Commissioner of Education, who apart from any action by the Board of Regents, is charged with the enforcement of the Education Law [Ed.Law § 305(1)], is before the Court as a defendant. See *Kinsella v.*

*Board of Ed. of Cent. Sch. Dist. No. 7 Erie Cty.,* 378 F.Supp. 54 (W.D.N.Y.1974), aff'd without opinion 542 F.2d 1165 (2d Cir. 1976), in which the Commissioner of Education and not the Board of Regents was named as a defendant in a challenge to the constitutionality of a provision of the Education Law. There was no discussion as to whether the Board of Regents should have been named, but clearly it was not found to be a necessary party to the challenge.

**14.** In some cases Art. 4, § 3 has been found to be an insufficient connection. *Cf. Oliver v. Board of Education of City of New York,* 306 F.Supp. 1286 (S.D.N.Y.1969); *Camacho v. Rogers,* 199 F.Supp. 155 (S.D.N.Y.1961). However, it should also be noted that in numerous cases Governors have been accepted, without discussion, as defendants in challenges to State laws. *Cf. Ray v. Atlantic Richfield Co., supra; St. Martins Press, Inc. v. Carey,* 440 F.Supp. 1196 (S.D.N.Y.1977).

**1364**

office thereof which requires the services of attorney or counsel in order to protect the interest of the state   .   .   .."

and

"(12) Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transactions of business, the attorney-general may apply, in the name of the people of the state of New York .   . for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts."

While the Court is not prepared to state that the foregoing provisions would in every case provide a sufficient basis for making the Attorney General a defendant, they suffice in this instance.   Although it is true that the Commissioner of Education has the duty to enforce the Education Law pursuant to § 305(1), in his initial impact statement on the Testing Law, dated October 16, 1979, Commissioner Ambach, while admitting an obligation to monitor compliance with the law, stated that violations would be brought to the attention of the Attorney General.   Furthermore, the Court is aware that plaintiff does not look favorably upon the testing legislation and could conceivably choose to violate its provisions, in which case the Attorney General would be empowered to act under the Executive Law § 63(12) to enjoin the violations.   See *Federal National Mortgage Ass'n. v. Lefkowitz, supra.*

Having determined that none of defendants' jurisdictional arguments is meritorious, the Court finds that jurisdiction is present in this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1343(3) as alleged by plaintiff.

*Standard for Issuance of a Preliminary Injunction*

The standard in the Second Circuit for issuance of a preliminary injunction is that:

"there must be a showing of possible irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make then a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."   *Buffalo Courier-Express, Inc. v. Buffalo Evening News,* 601 F.2d 48, 54 (2d Cir. 1979) quoting from *Caulfield v. Board of Education of the City of New York,* 583 F.2d 605, 610 (2d Cir. 1978).

See also *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1358 (1976).

The Court finds that in this case, the second criterion has been satisfied, warranting the issuance of a preliminary injunction enjoining enforcement of Sections 341 and 342 of the Education Law against plaintiff, pending a determination on the merits.

*Sufficiently Serious Questions Going to the Merits*

██   Plaintiff in this lawsuit has raised "serious questions going to the merits which warrant further investigation and trial." *Gulf & Western Indus., Inc. v. Great A. & P. Tea Co., Inc.,* 476 F.2d 687, 692 (2d Cir. 1973).

The federal Copyright Act of 1976 provides that copyright protection be conferred upon "original works of authorship fixed in any tangible means of expression, now known or later developed, from which they can be perceived, reproduced or otherwise communicated, either directly or with the aid of a machine or device."   [17 U.S.C. § 102(a)].   Copyright protection attaches immediately upon creation of the work.

Plaintiff claims, and defendants do not vigorously dispute, that the MCAT and studies and reports related thereto are works which are entitled to protection under the Copyright Act.[15]

---

**15.**  Defendants do, however, raise an issue concerning the fact that none of plaintiff's 1980 tests has as yet been registered.   The Court might also point out that the unpublished studies and reports which plaintiff seeks to protect from infringement are apparently not, as a rule, registered by plaintiff.

Although copyright protection attaches to a work at the time of creation, an action for infringement can only be instituted if the work has been registered under the Copyright Act. (17 U.S.C. § 411).   However, Courts have not hesitated to enjoin the infringement of future registered works when equity has required.

As holder of a copyright on the MCAT and related studies, plaintiff argues that it is entitled to the rights granted at 17 U.S.C. § 106 of the Copyright Act. These include the right to control the reproduction and distribution of the copyrighted work. [17 U.S.C. § 106(1) & (3)]. Plaintiff claims that these rights will be violated by Sections 341 and 342 of the Testing Law in that plaintiff, in order to comply, will be required under threat of civil penalty, to reproduce and distribute copies of the MCAT and will be required to file with the State, for public use, copies of the related studies.

In addition, plaintiff alleges that defendants, through enforcement of Section 341 and 342, will engage in unauthorized reproduction and distribution of the MCAT and related studies since the tests and studies will become public documents pursuant to the Testing Law and thereby available to the public under the New York State Freedom of Information Act (Art. 6 of the N.Y. Public Officers Law §§ 84 *et seq.*). By engaging in unauthorized reproduction and distribution of plaintiff's copyrighted works, defendants will, according to plaintiff, be guilty of copyright infringement under 17 U.S.C. § 501(a).[16]

Defendants argue, however, that plaintiff fails to recognize that the use of the copyrighted material pursuant to Sections 341 and 342 of the Testing Law falls within the well established doctrine of "fair use", recently codified in the Copyright Act of 1976 at 17 U.S.C. § 107.[17] "Fair use" has been defined as:

"a privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his

consent, notwithstanding the monopoly granted to the owner by the copyright." *Meeropol v. Nizer,* 560 F.2d 1061, 1068 (2d Cir. 1977), *cert. denied* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978), quoting from *Rosemont Enterprises, Inc. v. Random House, Inc.,* 366 F.2d 303, 306 (2d Cir. 1966) *cert. denied* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967).

The doctrine has been used as a means of balancing the exclusive rights of a copyright holder with the interest of the public in the dissemination of information in areas of universal concern including art, science, history and industry.

The Copyright Act at 17 U.S.C. § 107 sets forth some of the factors which must be considered in determining the applicability of a "fair use" defense as follows:

"(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work."

In asserting the applicability of the doctrine in this case, defendants point out that the Testing Law was enacted in the public interest in order to make testing agencies more accountable to the public, in light of the tremendous influence which standardized admissions tests can have on an individual's future. Furthermore, defendants

---

See *Wainright Securities, Inc. v. Wall Street Transcript Corp.,* 418 F.Supp. 620 (S.D.N.Y. 1976), aff'd on other grounds, 558 F.2d 91 (2d Cir. 1977), *cert. denied* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978); *Orth-O-Vision, Inc. v. Home Box Office,* 474 F.Supp. 672 (S.D.N.Y. 1979).

While that should certainly be the case with regard to the tests, it is not so clear as to the studies which have never been registered. However, since plaintiff has also raised sufficiently serious legal issues concerning preemption and constitutional violations, the Court is not precluded from granting injunctive relief as to the studies because of failure to register.

**16.** Support can be found for the position that states are not immune to charges of infringement or free to violate the provisions of the Copyright Act at will. See *Mills Music, Inc. v. State of Arizona,* 591 F.2d 1278 (9th Cir. 1979).

**17.** In addition to raising a "fair use" defense to plaintiff's infringement charge, defendants raise a First Amendment argument. Such claims have traditionally been handled under the "fair use" doctrine. *Wainright Securities, Inc. v. Wall Street Transcript, supra.*

contend that since there is no commercial purpose involved and since defendants do not intend to use plaintiff's tests for test purposes, that "fair use" should apply.

Plaintiff counters with several arguments in opposition to the application of the doctrine. First, plaintiff argues that it clearly cannot be said to be "fair use" to make public, documents which have been deliberately restricted from public distribution. Plaintiff also contends that Sections 341 and 342 would involve copying almost the entire copyrighted work in each instance, therefore, negating the possibility for application of the doctrine. See *Rosemont Enterprises, Inc. v. Random House, Inc., supra* at 316. Finally, plaintiff contends that disclosure under the Testing Law would virtually destroy the value of the tests and make impossible or render worthless continuation of the studies (a necessary pre-requisite for the preparation of future tests).

Although plaintiff's arguments against the application of the "fair use" doctrine have some merit, determination as to its use in this action must await a fuller development of the facts involved in light of defendants' public interest claim. As the Court indicated in *Meeropol v. Nizer, supra,* "The line which must be drawn between fair use and copyright infringement depends on an examination of the facts in each case," rather than "resort to any arbitrary rules or fixed criteria." 560 F.2d at 1068.

As previously indicated, in addition to the infringement claim, plaintiff alleges preemption of Sections 341 and 342 of the Testing Law by the federal Copyright Act and violation of its constitutional right to due process and equal protection. These claims also raise sufficiently serious claims to warrant further investigation.

Only a brief discussion with regard to those claims is necessary for the present. ■ Plaintiff's preemption argument is not without merit. While there is generally an assumption that an exercise of state police powers, as claimed by defendants, is not preempted by a federal statute, a clear indication to do so cannot be ignored by the Court. *Ray v. Atlantic Richfield Co., supra,*

17 U.S.C. § 301(a) shows a definite intent to preempt State laws which attempt to create the same rights as those created by § 106 of the Copyright Act. In *Mills Music, Inc. v. State of Arizona, supra,* at 1285, the Court stated that:

"[a]lthough states may provide for additional protections for federal copyrights, a state may neither abrogate nor in any way diminish the federally granted and protected rights of a copyright holder."

See also *Goldstein v. California,* 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973).

Nor can plaintiff's constitutional arguments be termed frivolous, even though the Court must uphold the constitutionality if possible to do so. Plaintiff alleges a valuable property interest in its tests and studies which will be taken without just compensation and virtually destroyed without due process of law.

While defendants assert that the Testing Law is a proper exercise of the State's police power, plaintiff contends that it is an invalid use because it is "not reasonably necessary to the effectuation of a substantial public purpose . . . [and] it has an unduly harsh impact upon [its] use of the property." *Penn Central Trans. Co. v. New York City,* 438 U.S. 104, 127, 98 S.Ct. 2646, 2661, 57 L.Ed.2d 631 (1978). A determination as to whether it is a proper exercise of police power can be made only after further investigation at trial.

Plaintiff's equal protection claim also requires further investigation. Plaintiff has alleged that the Law arbitrarily discriminates against it by exempting College Board and GRE achievement tests from the requirements of Section 342. Although it has been suggested that the tests were exempted as not being used for admissions purposes, that supposition has been challenged.

*Balance of Hardships*

In the recent case of *Buffalo Courier-Express v. Buffalo Evening News, supra,* the Court stated that:

"A 'balance of hardships tipping decidedly toward the party requesting the preliminary relief' must mean real hardship

from the denial of relief *pendente lite* —not merely the showing of difficulty of measurement which may suffice to constitute 'irreparable damage' where a plaintiff shows probable success." 601 F.2d at 58.

Plaintiff has satisfied that test. If no relief from enforcement is granted by this Court, plaintiff will have the option of no longer giving the test in New York State, of giving the test in New York and complying with the law, or of giving the test in New York and refusing to comply with the law.

The hardship involved in not giving the test in New York is clear, not only as to plaintiff but to potential test subjects who are residents or students in New York and perhaps ultimately to the entire medical profession if plaintiff's contentions are valid.

If plaintiff gives the test in New York and complies with the law, test questions used in scoring and related studies must be disclosed. According to plaintiff, disclosure of the test questions will create serious harm in two major ways. First, disclosure will prohibit reuse of the questions which will, in plaintiff's opinion present a serious problem as to the science knowledge portions of the exam for which there are allegedly a limited number of potential questions. Second, since plaintiff uses scored questions for equating purposes rather than unscored questions which need not be disclosed and which are generally used for equating, plaintiff will have no way to insure comparability between tests in the future, thus destroying the value of the tests. Plaintiff also claims that if studies must be disclosed, it will no longer be able to do confidential studies for undergraduate institutions interested in how their graduates have done and will no longer be able to do internal studies which investigate the value of questions and are used in development of new questions.

The hardship in giving the test in New York and refusing to comply with the Law is evident since the Law provides for a $500 fine for each violation (Ed.Law § 346), and the possibility of an injunction action by the Attorney General for consistent violations. [Executive Law § 63(12)].

Defendants, however, claim that the balance of hardships tips not towards the plaintiff but towards the public in light of the strong public interest in disclosure of the tests and studies. While the public interest is clearly a consideration in determining the propriety of granting injunctive relief, the Court is not convinced that the harm to the public interest here would be greater if preliminary injunctive relief is granted than if denied, pending a determination of the action on the merits. The Court is aware that the Commissioner of Education of New York has serious misgivings concerning the Testing Law. He has made clear that he questions whether the Law will serve the purposes for which it was enacted,[18] that he fears that many testing agencies will stop giving the tests in New York State, as threatened, or will decrease the number of test administrations per year, and he is concerned that the price for taking the tests will increase drastically, all to the detriment of the citizens of New York State. Already there have been amendments proposed to the Law, including one which would postpone the effective date.

While the State's purpose in enacting the Law may be a salutary example of a State protecting the interests of its citizens, that determination as to the merits of the Law as now written remain very much in the air at this time. That being the case, the Court cannot find that the public interest demands denial of injunction, nor the Court's opinion that the balance of hardships is decidedly in plaintiff's favor changed.

*Irreparable Injury*

Irreparable injury means "injury for which a monetary award cannot be ade-

---

18. One reason for enactment was the hope of being able to remove cultural biases from admissions tests.

quate compensation [and] where money damages is adequate compensation a preliminary injunction will not issue." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

Defendants claim that plaintiff's injuries can be adequately compensated in money damages. In so stating, defendants rely upon a statement in an affidavit submitted by plaintiff in which James Erdmann, plaintiff's Director of Educational Measurement and Research, estimated that it would cost plaintiff $200,000 in 1980 for question development, form construction, equating and other tasks essential to deal with the public disclosure requirements of the Law. If this was plaintiff's only allegation of damage, then clearly injunctive relief would be prohibited. However, as already discussed, plaintiff fears the actual destruction of the MCAT's value as an admission's test through disclosure by destruction of the ability to insure comparability between tests.[19] Also, plaintiff has indicated that it will no longer be able to do certain studies, including some done for the purpose of testing questions. Once plaintiff's test form or any of its studies are revealed, plaintiff asserts irreparable injury will have occurred.[20]

Defendants, however, claim that in order for plaintiff to be entitled to injunctive relief, it must show immediate harm which it cannot do since the first MCAT under the Law will not be given until April making disclosure unnecessary until the scores were sent out. Furthermore, defendants argue that since studies do not need to be filed until thirty days after completion, pursuant to Regulation 56.3(b) of the Commissioner, there could not possibly be an immediate threat justifying injunctive relief.

█ A preliminary injunction may not be issued where the alleged injury is remote or purely speculative. *State of New York v. Nuclear Reg. Com'n.*, 550 F.2d 745 (2d Cir. 1977). That is not the case here. Plaintiff will definitely be affected by the Law unless it decides not to give the test in New York, and even in making such a decision plaintiff will, in effect, be injured. Injury is not speculative, nor is it remote, since the damage is very likely to occur during the pendency of this action, the time period for which relief is now sought.[21]

The Court finds, therefore, that the plaintiff has demonstrated irreparable injury, and as previously indicated, grants plaintiff's motion for a preliminary injunction enjoining enforcement of Sections 341 and 342 as to this plaintiff during the pendency of this action.

SO ORDERED.

---

**19.** Plaintiff also points out that placement of unscored questions is extremely important and should not be revealed.

**20.** Plaintiff also points out that where a prima facie case of copyright infringement has been established, a detailed showing of irreparable harm is not necessary. *Cf. Wainright Securities, Inc. v. Wall Street Transcript Corp., supra.* The Court did not make any specific findings with regard to plaintiff's infringement allegations, so the application of this rule is questionable but also unnecessary in light of the adequate showing of irreparable injury.

**21.** Even though the first MCAT of the year is not scheduled to be given until April, there is no assurance that the action will no longer be pending then. "If MCAT determines that it cannot give the 1980 April MCAT in New York, it will have to begin notifying prospective examinees and undergraduate advisors through printed brochures, manuals, and other media of any changes in test center location no later than January 21, 1980." (Affidavit of Erdmann, *supra*.) In any event, plaintiff prepares studies on an ongoing basis and could complete one at any time during during the pendency of the action.