NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, a Corporation; Lukrieta Littlejohn, a Minor, by and through Carol Littlejohn, her Guardian Ad Litem; Angela Burford, a Minor, by and through Mattie Burford, her Guardian Ad Litem; Jack and Betty Lewis, individually and as parents and Guardians Ad Litem of Jack Lewis, Jr., and Felicia Lewis, Minors; Robert and Stella Parker, Individually and as parents and Guardians Ad Litem of Nancy Parker; Jose and Juanita Desousa, individually and as parents and Guardians Ad Litem of Dana Desousa, a Minor; Ken Thomas, individually and as parent and Guardian Ad Litem of Lamar Thomas and Kevin Thomas, Minors, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

STATE OF CALIFORNIA; Edmund G. Brown, Jr., Governor of the State of California; Senator James R. Mills and Assemblyman Leo T. McCarthy, as principal officers of the Legislative Body of the State of California; George Deukmejian, Attorney General of the State of California; Wilson Riles, California State Superintendent of Public Instruction; Michael Kirst, Marian Drinker, William Gilbert, Louis Honig, Jr., Mary McLuhan, Lorenza Schmidt, Lenora Wax, Lewis P. Bohler, Jr., Ann Leavenworth, and Allen Seid, each as members of the California State Board of Education; Superior Courts of the State of California in and for the Counties of Los Angeles, San Bernardino, San Diego, San Mateo, Santa Barbara, and San Joaquin, and all persons acting on concert with and at the discretion of the above-named officials, Defendants.

Civ.No. S-79-857 MLS.

United States District Court,
E. D. California.

April 3, 1981.

Nancy B. Reardan, Sacramento, Cal., Peter Cohn, Eva Paterson, San Francisco, Cal., for plaintiffs.

George Deukmejian, Atty. Gen., Richard D. Martland, Asst. Atty. Gen., Geoffrey L. Graybill, Deputy Atty. Gen., Sacramento, Cal., Alan K. Marks, County Counsel, San Bernardino, Cal., Donald L. Clark, County Counsel, San Diego, Cal., Keith C. Sorenson, Dist. Atty., George F. Camerlengo, Deputy Dist. Atty., Redwood City, Cal., Gerald A. Sherwin, County Counsel, County of San Joaquin, George H. Cunningham, Deputy County Counsel, Stockton, Cal., for defendants.

## AMENDED OPINION

MILTON L. SCHWARTZ, District Judge.

Plaintiffs herein seek declaratory and injunctive relief with respect to Article I, § 7(a)[1] of the California Constitution. Plaintiffs allege that this constitutional provision, which was enacted pursuant to a

---

1. Article I, § 7(a) provides:

A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation. In enforcing this subdivision or any other provision of this Constitution, no court of this state may impose upon the State of California or any public entity, board, or official any obligation

vote of the state's citizens, is racially discriminatory and that it therefore abridges the rights of plaintiffs to equal protection of the laws and equal educational opportunities. Plaintiffs pray for an order declaring Article I, § 7(a) unconstitutional under both the federal and state constitutions, and enjoining the defendants and their agents from implementing or giving effect thereto.

This matter has been before the court once before pursuant to motions to dismiss plaintiffs' first amended complaint. By order filed herein on July 25, 1980, the court dismissed the action without prejudice, for want of any Article III "case or controversy," as to defendants George Deukmejian, Attorney General of the State of California, March Fong Eu, Secretary of State of the State of California, Senator James R. Mills, then President Pro Tem of the California State Senate, Assemblyman Leo T. McCarthy, then Speaker of the California State Assembly, Wilson Riles, California State Superintendent of Public Instruction, Michael Karst, Clarence Avant, Marian Drinker, William Gilbert, Lilly Louis Honig, Mary McLuhan, Lorenza Schmidt, Anthony Sierra, Nancy Reeves, and Lenora Was, members of the California State Board of Education, and the San Diego, San Bernardino, and San Joaquin County Superior Courts. The court refused to dismiss the action on abstention grounds as to the State of California and Edmund G. Brown, Jr., Governor of the State of California. As a result of the court's July 25th order there remained as defendants in the action the State of California, Governor Brown, and the Los Angeles and Santa Barbara County Superior Courts.

On August 22, 1980 plaintiffs filed a second amended complaint wherein they assert the equal protection claims noted above. Said claims are brought pursuant to the Housing Act of 1949, 42 U.S.C. §§ 1441, *et seq.*, and the Civil Rights Acts of 1866, 1871, 1964 and 1968, 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1988, 2000a et seq. and 3601, *et seq.*[2] Plaintiffs name as defendants in the second amended complaint the State of California, Edmund G. Brown, Jr., Governor of the State of California, George Deukmejian, Attorney General of the State of California, Senator James R. Mills, President Pro Tem of the California State Senate, Assemblyman Leo T. McCarthy, past

or responsibility with respect to the use of pupil school assignment or pupil transportation, (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution.

Except as may be precluded by the Constitution of the United States, every existing judgment, decree, writ, or other order of a court of this state, whenever rendered, which includes provisions regarding pupil school assignment or pupil transportation, or which requires a plan including any such provisions shall, upon application to a court having jurisdiction by any interested person, be modified to conform to the provisions of this subdivision as amended, as applied to the facts which exist at the time of such modification.

In all actions or proceedings arising under or seeking application of the amendments to this subdivision proposed by the Legislature at its 1979–80 Regular Session, all courts, wherein such actions or proceedings are or may hereafter be pending, shall give such actions or proceedings first precedence over all other civil actions therein.

Nothing herein shall prohibit the governing board of a school district from voluntarily continuing or commencing a school integration plan after the effective date of this subdivision as amended.

In amending this subdivision, the Legislature and people of the State of California find and declare that this amendment is necessary to serve compelling public interests, including those of making the most effective use of the limited financial resources now and prospectively available to support public education, maximizing the educational opportunities and protecting the health and safety of all public school pupils, enhancing the ability of parents to participate in the educational process, preserving harmony and tranquility in this state and its public schools, preventing the waste of scarce fuel resources, and protecting the environment.

2. Plaintiffs also cite 5 U.S.C. § 8702, which concerns automatic life insurance coverage for federal employees. The court will assume that § 8702 has no bearing on the case *sub judice*.

Speaker of the California State Assembly, Wilson Riles, California State Superintendent of Public Instruction, Michael Kirst,[3] Marian Drinker, William Gilbert, Louis Honig, Jr., Mary McLuhan, Lorenza Schmidt, Lenora Wax,[4] Lewis P. Bohler, Jr., Ann Leavenworth, and Allen Seid, members of the California State Board of Education, and the Los Angeles, San Bernardino, San Diego, San Mateo, Santa Barbara and San Joaquin County Superior Courts.

A number of the defendants now move to dismiss plaintiffs' second amended complaint. Defendants State of California, Governor Brown and Attorney General Deukmejian move for an order of dismissal on the grounds that 1) the action is barred by the Eleventh Amendment to the United States Constitution, 2) there is no Article III "case or controversy" with respect to them, and 3) this is an appropriate case for the application of abstention doctrines. Defendant San Mateo County Superior Court joins in the State of California's motion to dismiss. Defendants San Joaquin and San Bernardino County Superior Courts move for an order of dismissal on Eleventh Amendment and abstention grounds. Defendant San Diego County Superior Court moves for such an order on Article III "case or controversy" and abstention grounds.

Defendants State of California, Governor Brown and Attorney General Deukmejian also move for a more definite statement. And finally, both the plaintiffs and defendants State of California, Governor Brown and Attorney General Deukmejian move for reconsideration of the court's July 25th order.

The court will consider first the impact of the Eleventh Amendment on the case *sub judice.* Thereafter, it will examine the second amended complaint and the papers filed in support thereof to determine whether plaintiffs have established the existence of an Article III "case or controversy" with respect to the defendants named

herein. Finally, should it be necessary to do so, the court will consider whether any of the abstention doctrines counsel it to dismiss or stay the subject action.

*THE ELEVENTH AMENDMENT*

"Any step through the looking glass of the Eleventh Amendment leads to a wonderland of judicially created and perpetuated fiction and paradox." *Spicer v. Hilton,* 618 F.2d 232, 235 (3d Cir. 1980). The fiction commences at a rudimentary level. By its terms the Eleventh Amendment precludes the federal courts from entertaining "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of *another* state, or by Citizens or Subjects of any *Foreign* state." U.S.Const. Amend. XI (emphasis added). However, by judicial construction, the bar imposed by the Eleventh Amendment has been extended to suits brought against the states by their own citizens. *Edelman v. Jordan,* 415 U.S. 651, 662, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Riggle v. State of California,* 577 F.2d 579, 581 (9th Cir. 1978); *Jacobson v. Tahoe Regional Planning Agcy.,* 566 F.2d 1353 (9th Cir. 1977), *aff'd in part rev'd in part sub nom. Lake Country Estates, Inc. v. Tahoe Reg. Plan.,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).

The Eleventh Amendment "partakes of the nature of a jurisdictional bar." *Jordan v. Gilligan,* 500 F.2d 701, 710 (6th Cir. 1974), *citing Edelman v. Jordan, supra.* See also *Mills Music, Inc. v. State of Arizona,* 591 F.2d 1278, 1282 (9th Cir. 1979); *Jacobson v. Tahoe Regional Planning Agcy., supra.* Accordingly, the court will examine not only the Eleventh Amendment immunity claims made by defendants State of California, Governor Brown, Attorney General Deukmejian, and San Mateo, San Joaquin and San Bernardino County Superior Courts, but it will also consider whether the Eleventh Amendment precludes plaintiffs from proceeding against any of the other defendants named herein.[5]

**3.** The court notes that the name of this defendant is spelled differently in plaintiffs' second amended complaint than in their first amended complaint.

**4.** *See* note 3, *supra.*

**5.** The court will not, however, consider whether the Eleventh Amendment is a bar to the

*The State of California*

While there has never been any doubt that absent its consent a state may not be sued for damages in the federal courts, there has on occasion been some confusion as to whether the Eleventh Amendment also precludes the federal courts from entertaining actions against the states wherein declaratory and/or injunctive relief is sought. *See, e. g., Yuan Jen Cuk v. Lackner,* 448 F.Supp. 4 (N.D.Cal.1977). This confusion with respect to equitable actions has arisen as a result of the Supreme Court's decision in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), wherein the Court, while recognizing that the Eleventh Amendment is a bar to suits against state officers wherein money damages are sought against such officers in their official capacities, ruled that the amendment is not a bar to suits seeking declaratory and/or injunctive relief against state officers. The "fiction" spun by the Supreme Court in *Ex parte Young, see Great Western Corp. v. Kidwell,* 577 F.2d 1256, 1265 (5th Cir. 1978), *rev'd on other grnds.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), hinges upon the premise that the sovereign states are incapable of authorizing unconstitutional conduct. It follows therefrom that an officer of a state engaging in unconstitutional conduct is no longer acting as an agent of the sovereign and, thus, is no longer entitled to share the sovereign's Eleventh Amendment immunity from suit.

■ The "fiction" supporting the decision in *Ex parte Young* necessarily requires that a distinction be drawn between suits brought directly against the sovereign states and suits brought against officers thereof. *See Allah v. Com'r of Dept. of Correctional Services,* 448 F.Supp. 1123, 1126 (N.D.N.Y.1978). Such distinction was maintained by inference in *Edelman v. Jordan, supra,* and has recently been expressly alluded to in *Hutto v. Finney,* 437 U.S. 678, 700, 98 S.Ct. 2565, 2578, 57 L.Ed.2d 522 (1978) and *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978). *See also Spicer v. Hilton, supra,* at 237. It is clear after *Hutto v. Finney, supra,* and *Alabama v. Pugh, supra,* that the Eleventh Amendment is a bar to suit against the states absent their consent irrespective of the nature of the relief sought. *See also Jacobson v. Tahoe Regional Planning Agcy., supra; Whitner v. Davis,* 410 F.2d 24 (9th Cir. 1969); *Construction Aggregates Corp. v. Rivera de Vicenty,* 573 F.2d 86 (1st Cir. 1978); *Rochester v. White,* 503 F.2d 263 (3d Cir. 1974); *Ad Hoc Committee on Jud. Admin. v. Commonwealth of Mass.,* 448 F.2d 1241 (1st Cir. 1973); *Savage v. Com. of Pennsylvania,* 475 F.Supp. 524 (E.D.Pa. 1979), *aff'd mem.,* 620 F.2d 289 (3d Cir. 1980); *Czajkowski v. State of Ill.,* 460 F.Supp. 1265 (N.D.Ill.1977), *aff'd mem.,* 588 F.2d 839 (7th Cir. 1978).

■ It is also clear that except in those rare cases where a state is deemed to have waived its Eleventh Amendment immunity and, thereby, consented to suit by the adoption or ratification of the legislation or statute serving as the basis of the claim being asserted, *see Palila v. Hawaii Dept. of Land & Natural Resources,* 471 F.Supp. 985 (D.Haw.1979), the protection against suit afforded by the Eleventh Amendment does not vacillate in accordance with the nature of the underlying claim for relief. Thus, for example, the bar against suit imposed by the Eleventh Amendment applies with equal vigor in the context of actions based on 42 U.S.C. § 1983 and in the context of actions based on 42 U.S.C. § 1981. *See Henry v. Texas Tech University,* 466 F.Supp. 141 (N.D.Tex.1979); *United States v. State of South Carolina,* 445 F.Supp. 1094 (D.S.C.1977), *aff'd mem.,* 434 U.S. 1026, 98 S.Ct. 756, 54 L.Ed.2d 775 (1978). *See also Ball v. Brown,* 450 F.Supp. 4 (N.D.Ohio 1977) (claims based on the Voting Rights Act, 42 U.S.C. §§ 1971, *et seq.,* barred with respect to the state).

■ The State of California has not consented to the instant suit either expressly or

claims asserted against defendants Superintendent Riles and the members of the State Board of Education since it is clear that the instant action must be dismissed as against these defendants for lack of an Article III "case or controversy." *See* discussion *infra.*

by implication. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Henry v. Texas Tech University, supra; United States v. State of South Carolina, supra.* Accordingly, this action must be dismissed with respect to the State of California.

*The Governor and the Attorney General*

■ At first glance it appears that plaintiffs face no Eleventh Amendment barriers with respect to their claims against Governor Brown and Attorney General Deukmejian. These two defendants are state officers, and the relief sought herein is equitable in nature. There is, however, a third requirement which must be satisfied before Eleventh Amendment immunity gives way to permit suit against state officers:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

*Ex parte Young, supra,* 28 S.Ct. at 453. *See also Southern Pac. Transp. Co. v. Brown,* 651 F.2d 613 (9th Cir. 1980). Plaintiffs argue that a sufficient connection with enforcement exists in the instant case because §§ 1 and 13 of Article V of the California Constitution impose on the governor and the attorney general general obligations to enforce all state laws.

■ "It is patently a question of state law whether and under what circumstances a particular defendant has any connection with the enforcement of the law of that state." *Shell Oil Company v. Noel,* 608 F.2d 208, 211 (1st Cir. 1979). However, "it is a question of federal jurisdictional law whether the connection is sufficiently intimate to meet the requirements of *Ex parte Young." Id.*

Courts have had considerable difficulty in coming to terms with this second federal jurisdictional question in cases where the requisite connection with enforcement allegedly arises by virtue of general enforcement obligations attendant to particular state offices. This difficulty is due in no small part to the Supreme Court's opinion in *Ex parte Young.* The Supreme Court made it clear that the requisite connection with enforcement need not be "specially created by the [challenged] act itself"; a sufficient connection with enforcement can arise "out of the general law." *Ex parte Young, supra,* 28 S.Ct. at 453. The Court neglected, however, to define with particularity what it meant by "general law." Nor did it need to as the Court identified four sources of connection with enforcement of the challenged act sufficient to sustain suit against the Attorney General of Minnesota: 1) the conduct of the Minnesota Attorney General in instituting suit to enforce the act; 2) the general obligation of the Minnesota Attorney General to enforce all the laws of the State of Minnesota; 3) the special statutory duty of the Minnesota Attorney General to institute suit against corporations which violate state laws; and 4) the specific duty of the Minnesota Attorney General to prosecute all actions deemed necessary by the State Railroad Commission. The Court concluded:

> that the attorney general, under his power existing at common law, and by virtue of these various statutes, had a general duty imposed upon him, which includes the right and the power to enforce the statutes of the state, including, of course, the act in question . . . . His power by virtue of his office sufficiently connected him with the duty of enforcement to make him a proper party to a suit of the nature of the one now before the United States circuit court.

*Id.* 28 S.Ct. at 454.

Thus, it is unclear from the Supreme Court's discussion in *Ex parte Young* whether its reference to "general law" may be understood as referring to laws of great breadth which impose upon state officers general duties to enforce all state laws, or whether such "general law" must be more circumscribed in nature, compelling officers to enforce specific statutes, including that under attack.

This uncertainty is aggravated by the Supreme Court's discussion in *Ex parte Young* of *Smyth v. Ames,* 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819 (1898), and *Fitts v. McGhee,* 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1899), cited to support its ruling that state officers are amenable to suit for declaratory and injunctive relief. In *Smyth v. Ames, supra,* the Supreme Court had permitted suit to proceed against a state attorney general. Recognizing that the statute under attack in *Ames* had no special provision "making it the duty of the attorney general to enforce it," the Court justified its prior ruling in *Ames* on the ground that "under his general powers, [the attorney general] had authority to ask for a mandamus to enforce such or any other law." *Ex parte Young, supra,* 28 S.Ct. at 451. The Court characterized *Ames* as supporting the proposition "that individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . may be enjoined by a Federal court of equity from such action." *Id.,* 28 S.Ct. at 452.

The Court thereafter turned its attention to *Fitts v. McGhee, supra,* wherein it had ruled that the defendant state officers were not amenable to suit because they had no "close connection" with the act under attack:

> "In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a

very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons."

*Ex parte Young, supra,* 28 S.Ct. at 452–53, quoting *Fitts v. McGhee, supra,* 19 S.Ct. at 274. Unfortunately, the Court failed to reconcile this restrictive language with its discussion of *Smyth v. Ames, supra,* where it clearly suggests that a general enforcement obligation will suffice to permit suit against state officers. In fact, the Court took pains to point out that "[t]he doctrine of *Smyth v. Ames* was neither overruled nor doubted in the *Fitts* case." *Ex parte Young, supra,* 28 S.Ct. at 452.

Thus, there is good cause for the confusion and conflict in the cases decided by the lower courts subsequent to *Ex parte Young.*

The most significant early district court case discussing the connection with enforcement requirement set forth in *Ex parte Young* is *City of Altus, Oklahoma v. Carr,* 255 F.Supp. 828 (W.D.Tex.1966). Plaintiffs therein sought declaratory and injunctive relief against the Attorney General of the State of Texas with respect to a Texas statute which prohibited the sale of ground water to out of state purchasers. The attorney general, pointing to the language of *Fitts v. McGhee, supra,* cited in *Ex parte Young,* argued that he had no special connection with the enforcement of the challenged statute. The district court found the attorney general's reliance on the *Fitts* language misplaced, and focused, instead, on the language in *Ex parte Young* which suggests that a general duty to enforce state laws, alone, is sufficient to meet the connection with enforcement requirement. The district court concluded that *Ex parte Young* "limited and modified" the language of *Fitts v. McGhee, supra. City of Altus, Oklahoma v. Carr, supra,* at 834. However, it is unclear from its opinion whether the district court unequivocally adopted the

view that a general enforcement obligation, alone, is sufficient to meet the requirement of *Ex parte Young*, as the district court specifically noted that in addition to being charged with the enforcement of all state laws, the Texas Attorney General was specifically authorized by statute to enforce the state's water laws.

In contrast, the district court in *Coon v. Tingle*, 277 F.Supp. 304 (N.D.Ga.1967) and the district court in *Oliver v. Bd. of Ed. of City of N.Y.*, 306 F.Supp. 1286 (S.D.N.Y. 1969), were impressed by the excerpts from *Fitts v. McGhee, supra*, quoted in *Ex parte Young*. Accordingly, the Georgia district court dismissed as against the Governor and the Attorney General of the State of Georgia an action challenging a state statute prohibiting the hiring of women for work in retail liquor stores. The district court specifically noted that it was the state revenue commissioner who was responsible for enforcement of the statute under attack. Likewise, the New York district court dismissed as against the Governor of the State of New York an action challenging certain state laws dealing with the structure of the New York City school board on the grounds that the Governor had no "special relation to the enforcement of the statute under attack." *Oliver v. Bd. of Ed. of City of N.Y., supra*, at 1288.

In 1970, however, the New York district court retreated from the position taken in *Oliver v. Bd. of Ed. of City of N.Y., supra*. In *Socialist Workers Party v. Rockefeller*, 314 F.Supp. 984 (S.D.N.Y.), *aff'd mem.*, 400 U.S. 806, 91 S.Ct. 65, 27 L.Ed.2d 38 (1970), the district court ruled that despite the absence of any "special relationship" with the enforcement of the statute under attack, the Governor of the State of New York was subject to suit for declaratory and injunctive relief by virtue of his general obligation to " 'take care that the laws

[of the state] are faithfully executed.' " *Id.* at 988, *quoting* N.Y.Const. Art. IV, § 3 (1964). The district court cited *City of Altus, Oklahoma v. Carr, supra*, in support of its ruling.

The New York district court followed the ruling of *Socialist Workers Party v. Rockefeller, supra*, in *Johnson v. Rockefeller*, 58 F.R.D. 42 (S.D.N.Y.1972),[6] and *Federal National Mortgage Ass'n v. Lefkowitz*, 383 F.Supp. 1294 (S.D.N.Y.1974),[7] as did the district court for Puerto Rico in *Partido Nuevo Progresista v. Hernandez Colon*, 415 F.Supp. 475 (D.P.R.1976).

In the same year that the New York district court decided *Federal National Mortgage Ass'n v. Lefkowitz, supra*, the district court in Iowa, without reference to the New York decisions, flatly rejected the argument that a general duty to enforce all state laws is sufficient to meet the connection with enforcement requirement set forth in *Ex parte Young*. *See Hatfield v. Williams*, 376 F.Supp. 212 (N.D.Iowa 1974).

The state of the law with respect to the connection with enforcement requirement was further complicated by the decision of the New York district court in *Gras v. Stevens*, 415 F.Supp. 1148 (S.D.N.Y.1976). Plaintiff therein challenged a provision of the state domestic relations law which permitted a wife being sued for divorce to seek a court order requiring the suing spouse to pay for her defense. The district court dismissed the action as to the New York Attorney General on the ground that a general duty to "defend actions in which the state is 'interested' " is not a sufficiently close connection with enforcement when the attorney general is not "threatening to deprive [the plaintiff] of anything." *Id.* at 1151. The district court also dismissed the action as to the Governor of New York, thereby rejecting the rule that a general

---

**6.** While suit against the Governor of the State of New York was deemed permissible by virtue of the governor's general obligation to enforce all state laws, suit against the state attorney general was not in light of the fact that the general obligations of the attorney general extended only to defending state laws rather than to enforcing them.

**7.** In this action the district court upheld suit as against both the Governor and the Attorney General of the State of New York. With respect to the attorney general, the court relied upon a state statute which specifically authorized the attorney general to seek injunctive relief against business entities, such as plaintiffs, which persisted in violating state law.

duty to enforce state laws is, in all cases, sufficient to meet the requirements of *Ex parte Young.* The court distinguished *Socialist Workers Party v. Rockefeller, supra,* and other cases in accord therewith, on the ground that these cases "have been concerned with the enforcement of programs, civil or criminal, dealing with the relations between the state and the individual," although it acknowledged that "[e]ven in such cases there is an opposing view as to the propriety of joining a governor as a defendant." *Gras v. Stevens, supra,* at 1152. With respect to the case before it, the court explained:

> we know of no case in which the general duty of a governor to enforce state laws has been held sufficient to make him a proper party defendant in a civil rights action attacking the constitutionality of a state statute concerning matrimonial or other private civil actions.

*Id.* at 1152. Thus, by creating a distinction based on the nature of the statute under attack, the New York court was able to approve the holding in *Socialist Workers Party v. Rockefeller, supra,* while retreating from the broad rule set forth therein.

The analysis employed by the New York district court in *Gras v. Stevens, supra,* appears to have been approved by the First Circuit in *Shell Oil Company v. Noel, supra.* There the plaintiff oil company sought declaratory and injunctive relief with respect to a state statute which, *inter alia,* made unlawful certain retail sales of motor fuel at less than four cents below the wholesale price. The Governor and the Attorney General of the State of Rhode Island claimed not to have a sufficient connection with the enforcement of the act so as to be subject to suit pursuant to *Ex parte Young.* In response to this argument the circuit court stated:

> The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute. . . .
>
> Of critical importance are the nature of the statute and the state officer's connection with that statute.

*Shell Oil Company v. Noel, supra,* at 211–12. Apparently the circuit court viewed the statute in question as requiring more than the minimal connection with enforcement deemed acceptable in *Socialist Workers Party v. Rockefeller, supra,* as it speculated as to the chances that the state courts would authorize the governor and the attorney general to bring suit to enforce the statute. Deeming it likely that the state courts would authorize such enforcement power, the circuit court concluded that it "seemed" likely that the governor and attorney general would be subject to suit. Why the circuit court felt compelled to look beyond any general enforcement powers attendant on the offices of the governor and the attorney general is unclear as the statute in question was certainly not akin to the private domestic law challenged in *Gras v. Stevens, supra.* In any event, the circuit court declined to rule on the Eleventh Amendment issue and went on, instead, to dismiss the action for lack of any Article III "case or controversy," there being no showing that either the governor or the attorney general intended to enforce the challenged statute.

Finally, in what is clearly the most thoughtful analysis of the *Ex parte Young* connection with enforcement requirement to date, the district court in Ohio disagreed in part and agreed in part with the New York district court's decision in *Gras v. Stevens, supra.* In *Allied Artists Pictures Corporation v. Rhodes,* 473 F.Supp. 560 (S.D. Ohio 1979) ("*Allied Artists I*"), 496 F.Supp. 408 (S.D.Ohio 1980) ("*Allied Artists II*"), plaintiffs challenged state legislation restricting the rights of motion picture distributors to contract with exhibitors. Certain of the defendants, including the Governor and the Lieutenant Governor of the State of Ohio and the Speaker of the Ohio State Legislature, moved to dismiss on Eleventh Amendment grounds. After a careful review of *Ex parte Young,* the district court concluded that the governor's "general duty to take care that state laws are faithfully executed, as mandated by a state constitution, is sufficient 'enforcement' power . . . to invoke the *Young* fic-

tion." *Allied Artists I, supra,* at 567. Thus, the Ohio district court disagreed with *Gras v. Stevens, supra,* "insofar as it declines to find *Young* enforcement power in the Governor's general duty to see to the execution of state laws." *Allied Artists I, supra,* at 568.

However, the Ohio district court agreed "with the *Gras* result," reasoning that some further limitation on *Ex parte Young* is necessary "to preclude parties from testing the constitutionality of state legislation by simply naming the governor as a defendant, a practice which if unchecked would effectively eviscerate the Eleventh Amendment." *Id.* Thus, the Ohio district court concluded that not only "must there be a state officer who has a connection with the enforcement of the challenged statute, but there must also be a real, not ephemeral, likelihood or realistic potential that the connection will be employed against plaintiffs' interests." *Id.* By employing this two-part test, the Ohio district court was able to reconcile the holdings in all the New York district court cases:

> Thus in *Gras,* for instance, there was no realistic potential that the governor would have taken any interest in the underlying divorce proceeding or in the challenged statute itself, the constitutionality of which could well have been advocated by the private party seeking its benefits. On the other hand, in cases such as *Federal National Mortgage, Socialist Workers Party* or *Altus,* all *supra,* it was reasonable to believe that the defendant state officers' connection with enforcement of state laws would have been brought to bear upon offending parties. . . .

In reviewing the case law, the Court finds it helpful to picture these relationships on a continuum. At one end of the continuum would be cases such as *Gras* in which the challenged statute regulates relationships between private parties, and which creates rights which can be amply protected by private action. In these cases the realistic potential that a state official would intercede to vindicate statutory rights is minute. At the other end of the continuum would lie cases which

for example challenge state election laws or voting-district apportionment laws. There, statutes have created rights and relationships of substantial public interest which cannot be readily protected in litigation between private parties. Thus in a case such as *Socialist Workers Party v. Rockefeller, supra,* a case involving a challenge to the New York Election Act, it does not stretch the *Young* fiction too far to make the governor a party defendant by assuming that his general connection to the enforcement of state election laws might potentially be brought to bear on parties violating the law under attack. *Id.* at 568.

In applying this two-part analysis to the case before it, the Ohio district court reasoned that in light of the "self-enforcing" nature of the challenged statute, it must examine the "interests of the state in seeing the legislation enforced and . . . the ability of private parties to effectuate its mandate." *Allied Artists II, supra,* at 425. The court concluded that numerous "commands" of the public interest statute were not likely to be enforced through private actions, and, therefore, ruled that the Governor of the State of Ohio was subject to suit for declaratory and injunctive relief. The court refused, however, to permit suit to proceed against the Lieutenant Governor and the Speaker of the Ohio Legislature, finding that these defendants had no connection "whatsoever" with the enforcement of the challenged statute. *Allied Artists I, supra,* at 569.

This court agrees with the Ohio district court that a general obligation to enforce or execute state laws is sufficient to meet the connection with enforcement requirement set forth in *Ex parte Young.* The court is persuaded in this regard by the Supreme Court's repeated references in *Ex parte Young* to some vague "general law" which gives rise to enforcement obligations, by its focus on the general obligations attendant on the office of the Minnesota Attorney General, and, most particularly, by the Court's careful affirmance of its holding in *Smyth v. Ames, supra,* in light of its subsequent decision in *Fitts v. McGhee, supra.*

However, this court does not agree with either the Ohio district court of the New York district court that *Ex parte Young* requires further inquiry into the nature of the statute under attack, *see Gras v. Stevens, supra,* or into the likelihood that any connection with enforcement will be employed against a plaintiff's interest, *see Allied Artists I, supra,* before it can be determined that the doctrine set forth in *Ex parte Young* removes, in any given case, the bar against suit imposed by the Eleventh Amendment. This is not to say that these inquiries are unimportant or irrelevant. They are indeed important as they deal with the very real problem of state officers being named as essentially symbolic defendants merely because such officers happen to be charged with general obligations to execute or enforce state laws. However, instead of dealing with this problem of symbolic defendants under the rubric of the Eleventh Amendment, it is more theoretically sound to deal with the problem by way of the Article III "case or controversy" requirement. It appears that at the time *Ex parte Young* was decided there was no clear body of case law such as there is now, *see, e. g., Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Duke Power Co. v. Carolina Environ. Study,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), focusing specifically on the Article III "case or controversy" requirement. Thus, it is understandable that certain comments made by the Court in *Ex parte Young* which now would clearly be recognized as being in the nature of a "case or controversy" analysis should have been enmeshed in its discussion of the Eleventh Amendment.[8] It is in light of this recent body of case law that this court is convinced that inquiries into the "likelihood or realistic potential" that an officer's connection with enforcement will be employed against a plaintiff's interest, *see Allied Artists I, supra,* ought to be made in the context of Article III rather than in the context of the Eleventh Amendment, as such inquiries bear directly on the question which lies at the heart of the Article III "case or controversy" requirement— has the plaintiff suffered an injury which is fairly traceable to the conduct of the defendant. *See Gladstone, Realtors v. Village of Bellwood, supra; Duke Power Co. v. Carolina Environ. Study, supra; Simon v. Eastern Ky. Welfare Rights Organization, supra.*

Accordingly, this court will not, on the basis of the Eleventh Amendment, dismiss the action *sub judice* as to Governor Brown and Attorney General Deukmejian as both of these state officers are charged with the enforcement of the laws of the State of California.[9] Calif.Const., Art. V.,

8. For example, in summarizing a historical overview of cases, the Court stated, "[t]he various authorities we have referred to furnish ample justification for the assertion that individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings ... may be enjoined...." *Ex parte Young,* 209 U.S. 441, 155–156, 28 S.Ct. 441, 452, 52 L.Ed.2d 714 (1907). The latter part of the Court's statement clearly goes to the requirement of Article III that there be a present or imminently threatened injury. *See* discussion *infra* at 25.

9. The court's ruling is not in conflict with the Ninth Circuit's recent decision in *Southern Pac. Transp. Co. v. Brown,* 651 F.2d 613 (9th Cir. 1980). In that case the Ninth Circuit upheld the dismissal of an action brought against the Attorney General of the State of Oregon on two grounds: 1) there was no Article III "case or controversy" with respect to the attorney general and 2) the attorney general had no connection with the challenged act sufficient to invoke the doctrine of *Ex parte Young.* The circuit court noted that the attorney general had no authority to prosecute under the challenged act, and ruled that the mere obligation to advise and direct local district attorneys was not sufficient to establish a connection with enforcement.

The Ninth Circuit's ruling is not at all inconsistent with the New York district court cases of *Federal National Mortgage Ass'n v. Lefkowitz,* 383 F.Supp. 1294 (S.D.N.Y.1974), and *Gras v. Stevens,* 415 F.Supp. 1148 (S.D.N.Y.1976), wherein it was held that a general duty to defend state laws is insufficient to meet the requirements of *Ex parte Young.* Furthermore, this court notes that the Oregon Attorney General is not generally charged with enforcement of all state laws. *See* Or.Stat. §§ 180.010, *et seq.*

§§ 1 and 13. Instead, the court will turn its attention to the requirements of Article III to determine whether an actual "case or controversy" exists between plaintiffs and these defendants. *See* discussion *infra.*

### *The President Pro Tem. of the State Senate and the Speaker of the State Assembly*

■ Recent authority indicates that officers of a state legislature share Eleventh Amendment immunity to the same extent as do executive officers. *Allied Artists I, supra,* at 569–70. Assuming this to be the case, the question arises whether the legislative officers sued herein have any connection with the enforcement of the challenged constitutional provision so as to be subject to suit for injunctive and declaratory relief pursuant to the doctrine enunciated in *Ex parte Young.* The court need not reach this question, however, in light of the fact that defendants Mills and McCarthy are sued herein solely in their capacities as principal officers of the California legislature. As such, defendants Mills and McCarthy are absolutely immune from suit pursuant to common law legislative immunity. *Supreme Court of Virginia v. Consumers Union, etc.,* 446 U.S. 719, 731–732, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980).

Accordingly, this action must be dismissed as to defendants Mills and McCarthy.

### *The State Superior Courts*

The Eleventh Amendment inquiry with respect to the defendant Superior Courts is two-fold, the initial question being whether these defendant courts are "arms" of the State of California, *see Ginter v. State Bar of Nevada,* 625 F.2d 829 (9th Cir. 1980), and, as such, entitled to share in the state's sovereign immunity. The second question, which is reached only upon a finding that the defendant superior courts are "arms" of the state, is whether such courts are, in any event, subject to suit for declaratory and injunctive relief pursuant to the doctrine of *Ex parte Young.*

■ Few courts have considered the status of state courts vis-a-vis the state as a sovereign entity. However, those courts which have considered the question have consistently held that state courts are "arms" of the state and that they are entitled, as such, to share in the protection against suit afforded by sovereign immunity. *See Canfield v. Wis. Bd. of Attys. Professional Comp.,* 490 F.Supp. 1286 (W.D. Wis.1980); *Louis v. Supreme Court of Nevada,* 490 F.Supp. 1174 (D.Nev.1980). *See also Erdmann v. Stevens,* 458 F.2d 1205, 1214 n.5 (2d Cir. 1972). *Cf. Zuckerman v. Appellate Div., Sec. Dept., S.Ct. of St. of N.Y.,* 421 F.2d 625 (2d Cir. 1970); *Ostroff v. New Jersey Supreme Court,* 415 F.Supp. 326 (D.N.J.1976).[10] This court cannot imagine any different result as it seems clear that the judicial branch is an integral part of that unit which is referred to as the sovereign state. The fact that the defendant courts herein are the courts of entry into the state judicial system, rather than the courts of last resort, does not make them any less an integral part of the judi-

---

10. State courts were dismissed in these two cases on the ground that as "arms" of the state they were not "persons" within the meaning of 42 U.S.C. § 1983. Whether an entity is a "person" within the meaning of § 1983 is a question somewhat narrower in scope than the question of whether the Eleventh Amendment is a bar to suit. The former question deals solely with whether a cause of action is stated under a particular federal statute, while the latter deals with a more general jurisdictional bar. However, the questions are related in that the definition of "person" for purposes of § 1983 turns almost entirely upon notions of sovereign immunity. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

There is some question as to whether the holding in *Zuckerman v. Appellate Div., Sec.*

Dept., S.Ct. of St. of N.Y., 421 F.2d 625 (2d Cir. 1970), has been overruled by *Person v. Association of Bar of City of New York,* 554 F.2d 534 (2d Cir.), *cert. den.,* 434 U.S. 924, 98 S.Ct. 403, 54 L.Ed.2d 282 (1977). Two state trial courts were named as defendants therein, and the Second Circuit recognized that there was a question as to whether the courts were "persons" for purposes of § 1983. However, instead of addressing the question, the court, in what can only be described as a complete non sequitur, ruled that the courts were subject to suit for injunctive relief because *judicial* immunity is not a bar to equitable actions. This court is confused by the analysis employed by the Second Circuit and declines to follow the implications inherent in *Person.*

**1258**

cial branch of the State of California. These courts are "arms" of the State of California, and, as such, are entitled to share in the state's sovereign immunity.

Whether the defendant courts are subject to suit for declaratory and injunctive relief under the doctrine of *Ex parte Young*, irrespective of their status as "arms" of the State of California, is a more difficult question in light of the considerable disagreement among the courts as to whether the doctrine of *Ex parte Young* applies solely to state officers or whether it also extends to state agencies. *Compare Litton Industries, Inc. v. Colon*, 587 F.2d 70 (1st Cir. 1978); *Savage v. Com. of Pennsylvania, supra*; [11] *Henry v. Texas Tech University, supra; Citizens' Committee, Etc. v. U. S. Coast Guard*, 456 F.Supp. 101 (D.N.J.1978); and *United States v. State of South Carolina, supra, with United Pac. Ins. Co. v. Capital Development Bd.*, 482 F.Supp. 541 (N.D.Ill. 1979); *Beck v. State of California*, 479 F.Supp. 392 (C.D.Cal.1979); *Usry v. Louisiana Dept. of Highways*, 459 F.Supp. 56 (E.D.La.1978); *San Diego Unified Port Dist. v. Gianturco*, 457 F.Supp. 283 (S.D.Cal. 1978); and *Pharmacists Soc. of Mil. Cty. v. Dept. of H. & S.*, 79 F.R.D. 405 (E.D.Wis. 1978).

There is, of course, no real issue as to the applicability of the doctrine of *Ex parte Young* in the instant case if the defendant superior courts are viewed as state officers rather than departments or agencies of the State of California. The inherent implausi-

bility of such a view is apparent by the very option of characterizing the courts as an agency or department of the state. Only state court judges can fairly be said to be state officers.

In *Alabama v. Pugh, supra*, the Supreme Court flatly ruled that the Eleventh Amendment was a bar to equitable relief against a state agency.[12] This ruling appears to have resolved the controversy over the scope of the doctrine of *Ex parte Young*, with the attendant result that the doctrine operates to remove the bar against suit imposed by the Eleventh Amendment only with respect to state officers and not with respect to state agencies. *See Batton v. State Government of N.C., etc.*, 501 F.Supp. 1173 (E.D.N.C.1980); *Massachusetts Hospital Ass'n, Inc. v. Harris*, 500 F.Supp. 1270 (D.Mass.1980); *Highfield Water Co. v. Public Service Com'n*, 488 F.Supp. 1176 (D.Md.1980); *Loewen v. Turnipseed*, 488 F.Supp. 1138 (N.D.Miss.1980). *Contra Florida Nursing Home Ass'n v. Page*, 616 F.2d 1355 (5th Cir.), *cert. den.,* —— U.S. ——, ——, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980). Such a limitation of the scope of *Ex parte Young* is not inconsistent with either the language of the opinion, or with the "fictional" theory underlying the decision as that theory hinges upon a distinction between an infallible sovereign entity and its potentially errant, independent officers.

Accordingly, in light of *Alabama v. Pugh, supra*, this action must be dismissed with respect to the defendant California superior courts.[13] See *Canfield v. Wis. Bd.*

---

**11.** The Pennsylvania district court's discussion of the Eleventh Amendment in this case is particularly helpful. Unlike many other courts, the Pennsylvania court recognizes that the nature of the relief sought does not become relevant until *after* it has been determined that the doctrine of *Ex parte Young* applies so as to abrogate the otherwise absolute bar imposed by the Eleventh Amendment.

**12.** The ruling was noted with approval in *Quern v. Jordan*, 440 U.S. 332, 338–41, 99 S.Ct. 1139, 1144–45, 59 L.Ed.2d 358 (1979). However, in the more recent Supreme Court case of *Supreme Court of Virginia v. Consumers Union, etc.*, 446 U.S. 719, 736–38, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980), there is passing dicta to the contrary. This court believes the wiser choice is to rely upon those cases which expressly address the issue. *See Alabama v.*

*Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978); *Quern v. Jordan, supra.*

**13.** The recent Supreme Court decision in *Supreme Court of Virginia v. Consumers Union, etc.*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) does not persuade the court that the result must be otherwise. While the Court therein upheld a judgment against the Supreme Court of Virginia, it did so solely on the ground that the action, insofar as it sought declaratory and injunctive relief, was not barred by prosecutorial immunity. The court was able to base its ruling on prosecutorial immunity because of a unique provision in the Virginia Code of Professional Responsibility which empowered the state supreme court to institute and prosecute actions for violations of the code.

*of Attys, Professional Comp., supra; Louis v. Supreme Court of Nevada, supra.*

## ARTICLE III "CASE OR CONTROVERSY"

■ Ordinarily the threshold question in every case before the federal courts is whether there exists a "case or controversy" sufficient to satisfy Article III of the Constitution. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Absent a "case or controversy," a federal court lacks jurisdiction to consider the matters before it. *Gladstone, Realtors v. Village of Bellwood, supra,* 99 S.Ct. at 1608; *Warth v. Seldin, supra; Du Pree v. United States,* 559 F.2d 1151, 1153 (9th Cir. 1977). However, where Eleventh Amendment immunity issues are raised it is logical that they should be dealt with first, as this court has done, since the Eleventh Amendment is, itself, jurisdictional in nature and since the inquiry under the Eleventh Amendment is generally less cumbersome than that under Article III.[14] As a result of the court's Eleventh Amendment analysis in the case *sub judice* it need consider the Article III "case or controversy" requirement only with respect to Governor Brown, Attorney General Deukmejian, Superintendent Riles, and the members of the California State Board of Education.

■ The Article III "case or controversy" requirement insures that federal courts will not render mere advisory opinions. *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Thus, broadly stated, the threshold inquiry is "whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979), *quoting Railway Mail Association v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945); *see also Golden v. Zwickler, supra,* 89 S.Ct. at 959. Where parties desire the same result there is no "case or controversy." *GTE Sylvania, Inc. v. Consumers Union, etc.,* 445 U.S. 375, 383, 100 S.Ct. 1194, 1199, 63 L.Ed.2d 467 (1980). Likewise, the fact that all parties earnestly wish a resolution of an issue or that swift resolution of an issue would benefit the general public does not, in and of itself, establish an Article III "case or controversy." *Kremens v. Bartley,* 431 U.S. 119, 136, 97 S.Ct. 1709, 1718, 52 L.Ed.2d 184 (1977).

■ The concept of "standing" is an integral part of the Article III "case or controversy" requirement. *Simon v. Eastern Ky. Welfare Rights Organization, supra,* 96 S.Ct. at 1924; *Du Pree v. United States, supra,* at 1153. "[T]he standing question in its Art. III aspect 'is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Simon v. Eastern Ky. Welfare Rights Or-*

It could be argued that the Supreme Court must have presumed the Eleventh Amendment not to be a bar to the suit since it reached common law immunity defenses. However, such a presumption is unwarranted in light of the Court's express statement that the question of whether the "Virginia Court as an entity is not a 'person' suable under § 1983" was not before it. *Id.* 100 S.Ct. at 1977 n.15. *See* discussion *supra* at 1257. Such a presumption would not be warranted in any event in light of the fact that states and entities thereof may waive the protections afforded by the Eleventh Amendment.

The Court went on to note that "[i]n any event, prospective relief was properly awarded against the Chief Justice in his official capacity." *Id.* In light of this statement, the court believes that the distinction that it has drawn in the case *sub judice* between the state courts, as entities, and the judges thereof is theoretically sound both in terms of the Eleventh Amendment as defined by *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978), and in terms of the doctrine enunciated in *Ex parte Young.*

**14.** This does not happen to be true in the instant case with respect to the Eleventh Amendment issues raised by the defendant state officers. But this is only because of the tortured history of the connection with enforcement requirement set forth in *Ex parte Young.* Once the court determined that a minimal connection was sufficient, the inquiry with respect to the defendant state officers was very brief.

ganization, supra, 96 S.Ct. at 1924, quoting Warth v. Seldin, supra, 95 S.Ct. at 2205, (emphasis in original).[15] In order to establish the requisite "stake" in the outcome of a controversy, a plaintiff must establish 1) that he has personally suffered some actual or threatened injury, 2) that there is a fairly traceable causal connection between the claimed injury and the challenged conduct, and 3) that there is a substantial likelihood that the relief requested will redress the injury claimed. Gladstone, Realtors v. Village of Bellwood, supra, 99 S.Ct. at 1608; Simon v. Eastern Ky. Welfare Rights Organization, supra; Warth v. Seldin, supra; N. A. A. C. P., Boston Chapter v. Harris, 607 F.2d 514, 518 (1st Cir. 1979); see also Legal Aid Soc. of Alameda Cty. v. Brennan, 608 F.2d 1319, 1333 (9th Cir. 1979).[16]

15. The court recognizes that there are also prudential principles applicable to standing. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); Warth v. Seldin, 422 U.S. 490, 500–01, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975). However, the parties have not raised the applicability of any of these principles. In light of the fact that prudential considerations are not constitutional limitations on the court's power, the court chooses not to consider, sua sponte, the applicability of these considerations.

16. Plaintiffs argue that the second requirement, that there be a fairly traceable causal connection between the claimed injury and the challenged conduct, and the third requirement, that there be a substantial likelihood that the relief requested will redress the alleged injury, are alternative requirements. In other words, plaintiffs contend that standing may be established by alleging injury and causality or by alleging injury and likely remediation. The court is convinced that Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), and subsequent Supreme Court cases, Vil. of Arlington Hts. v. Metro. Housing Dev., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), Duke Power Co. v. Carolina Environ. Study, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), and Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), require plaintiffs to establish that their alleged injuries are fairly traceable to the challenged conduct of the defendants in order to establish standing. The court is aware of the Supreme Court's use of the phrase "or put otherwise" as an apparent disjunctive in discussing causation and remediation. Duke Power Co. v. Carolina En-

The first prong of the standing test, the injury requirement, is met by allegations that the plaintiff " 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct." O'Shea v. Littlejohn, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974), quoting Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1087 (1972). "Abstract injury is not enough." O'Shea v. Littlejohn, supra, 94 S.Ct. at 675. "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' " Id., quoting Golden v. Zwickler, supra, 89 S.Ct. at 960. Allegations of threatened injury are sufficient if the threatened injury is likely or realistically expected to flow from the alleged wrongful conduct of the defendant. Babbitt v. United Farm Workers Nat. Union, supra, 99 S.Ct. at 2308; Gladstone, Realtors v. Village of Bellwood, supra, 99 S.Ct. at 1613–14.[17]

viron. Study, supra, 98 S.Ct. at 2631. However, the court interprets this language as essentially equating the causation and remediation requirements. After Simon v. Eastern Ky. Welfare Rights Organization, supra, the requirement that a plaintiff establish that the relief requested will redress the alleged injuries is satisfied only by showing that the alleged injuries are fairly traceable to the defendant's conduct, the premise being that the court's remedial power will redress alleged injuries when the defendant upon whom the remedial power descends is the source of the alleged injuries. The court sets forth the standing test as three-pronged in light of recent circuit authority. Legal Aid Soc. of Alameda Cty. v. Brennan, 608 F.2d 1319, 1333 (9th Cir. 1979); N. A. A. C. P., Boston Chapter v. Harris, 607 F.2d 514, 518 (1st Cir. 1979). But see American Jewish Congress v. Vance, 575 F.2d 939, 946 (D.C.Cir.1978) (setting forth the standing test as two-pronged).

17. The Ninth Circuit has recently elaborated on what will suffice to establish a threat of injury. In Seattle School Dist. No. 1 v. State of Washington, 633 F.2d 1338 (9th Cir. 1980), defendants moved to dismiss the action as against one of the plaintiff school districts on the ground that the state had not threatened that particular district with enforcement of the challenged act. The circuit court ruled that it is not always necessary that there be a direct threat of injury "if the circumstances of the dispute provide sufficient guarantees that a genuine case or controversy exists. Id. at 1342 n.1. Sufficient guarantees were present because 1) the act in question was highly specific and clearly

The second prong of the standing test, the causal requirement, directs the plaintiff to establish that there is a substantial likelihood that "but for" the challenged conduct of the defendant, plaintiff would not suffer his alleged injuries. *Duke Power Co. v. Carolina Environ. Study, supra*, 98 S.Ct. at 2631–33. Or, as stated by the Circuit Court for the District of Columbia, there must be a showing that "absent defendant's alleged constitutional infractions, there is a 'substantial probability' that plaintiff ... would [not have suffered his alleged injuries]." *American Jewish Congress v. Vance*, 575 F.2d 939, 946, *quoting Simon v. Eastern Ky. Welfare Rights Organization, supra*, 96 S.Ct. at 1926. Mere speculation that a defendant's conduct is the fairly traceable source of plaintiff's alleged injuries cannot supply the requisite causal nexus. *Simon v. Eastern Ky. Welfare Rights Organization, supra*, 96 S.Ct. at 1926. Thus, if it appears that plaintiff's alleged injuries are the result of conduct of a third person not a party-defendant, or the result of other circumstances not within the control of the defendant, there can be no finding that a sufficient causal nexus exists between the plaintiff's alleged injuries and the defendant's challenged conduct. *Simon v. Eastern Ky. Welfare Rights Organization, supra*, 96 S.Ct. at 1926; *Warth v. Seldin, supra*, 95 S.Ct. at 2209.

The court will not discuss the third prong of the standing test, the remediation requirement, since it follows, *a fortiori*, in this case that, if plaintiffs meet the first and second requirements of the standing test, they will meet the remediation requirement.

Having set forth those principles which must guide this court in its Article III "case or controversy" analysis, the court now considers whether an actual "case or controversy" exists between plaintiffs and defendants Governor Brown, Attorney General Deukmejian, Superintendent Riles, and the members of the California State Board of Education.

*Governor Brown*

The mere fact that the Governor of the State of California is generally charged with enforcing all state laws does not make the injuries allegedly suffered by plaintiffs, as a result of the amendment of the California Constitution, "fairly traceable" to the governor as his minimal connection with the enforcement of the challenged act causes no injury or threat of injury to plaintiffs unless it appears that such connection with enforcement is to be employed against plaintiffs' interests. *See Supreme Court of Virginia v. Consumers Union, etc., supra*, 100 S.Ct. at 1977 n.15; *Shell Oil Company v. Noel, supra*, at 213. Plaintiffs do not allege, nor is there anything before the court that suggests, that Governor Brown intends to enforce the constitutional provision here under attack. Other factors which persuaded the district court in *Allied Artists I, supra; Allied Artists II, supra*, to permit suit against the Governor of Ohio are not present in this case as the constitutional provision here in question can be challenged in all respects in a suit against private parties who seek to implement the "command" of the challenged act.

The more difficult question with respect to Governor Brown is whether his act of signing the legislation proposing the constitutional amendment challenged herein can be said to be a fairly traceable source of plaintiffs' alleged injuries. In the ordinary situation where the governor's signature gives immediate legal effect to legislation, i. e., where it transforms legislation into statutory law, his act of signing might, in some cases, be a fairly traceable cause of injury. However, in the case at bar, the effect of the governor's signature was merely to place the legislation on the ballot in the form of a proposition thereby enabling the voters of the State of California to determine whether or not the state constitution should be amended as proposed. The court fails to see how the governor's essen-

---

applicable to the plaintiff district, 2) the act was of recent origin and not one which had "lain moribund for years," 3) state officers *had threatened* to enforce the act against similarly situated plaintiff school districts, and 4) the act, as a civil statute, imposed an affirmative duty to comply.

tially ministerial act can be said to be a fairly traceable source of plaintiffs' alleged injuries. Plaintiffs' alleged injuries are the result of the conduct of third persons over which the governor has no control—those voting in favor of the proposition and those who are now seeking to enforce its provisions.

The court therefore concludes that there is no Article III "case or controversy" between plaintiffs and defendant Governor Brown. Accordingly, this action must be dismissed with respect to Governor Brown.

*Attorney General Deukmejian*

■ Like the governor, the Attorney General of the State of California is generally charged with enforcing all state laws. As the court ruled above, such an obligation, alone, is not sufficient to meet Article III "case or controversy" requirements. Plaintiffs do not allege, and there is nothing before the court to suggest, that Attorney General Deukmejian intends to enforce the provisions of the challenged act.

Likewise, the general obligations of the attorney general to draft voting pamphlets and to give legal advice to state officers do not establish the existence of a "case or controversy" between Attorney General Deukmejian and plaintiffs. *Southern Pac. Transp. Co. v. Redden, supra.*

Plaintiffs point out that Attorney General Deukmejian refused to initiate a lawsuit to have Article I, § 7(a) declared unconstitutional. Plaintiffs' reliance on this conduct is misplaced; the attorney general could not have properly initiated such an action as he has no standing to challenge the constitutionality of a state statute merely because he believes it to be unconstitutional. *Finch v. Mississippi State Medical Ass'n, Inc.,* 585 F.2d 765, 774 (5th Cir. 1978). *See also City of South Lake Tahoe v. California Tahoe,* 625 F.2d 231 (9th Cir. 1980). Furthermore, the attorney general's refusal to institute suit is not the *source* of plaintiffs' alleged injuries. It might be argued that his refusal has other-

wise perpetuated plaintiffs' alleged injuries. However, this argument presumes that had the attorney general instituted suit, plaintiffs would no longer be suffering their alleged injuries. Such a presumption requires a power of prediction that this court does not possess.

The court therefore concludes that there is no Article III "case or controversy" between plaintiffs and defendant Attorney General Deukmejian. Accordingly, this action must be dismissed with respect to the attorney general.

*Superintendent Riles and the Members of the California State Board of Education*

■ It appears from the uncontested declaration of Richard D. Martland, filed herein by defendants, that real legal adversity does not exist between plaintiffs and defendants Superintendent Riles and the members of the State Board of Education. Mr. Martland makes the following statements in his declaration:

> By written communication dated December 17, 1979, and received by this office on December 19, 1979, the Chief Counsel of the Department of Education, Thomas M. Griffin, advised the Attorney General's Office that the Superintendent of Public Instruction and the State Board of Education "do not ally themselves" with the position of the Attorney General regarding the constitutionality of Proposition 1....
>
> I am informed and believe it to be true that, if the Superintendent of Public Instruction and State Board of Education remain in the action, they will either join the plaintiffs' attack on the constitutionality of Proposition 1, or take no position on its constitutionality.

The court notes that these defendants have made no effort in any legal memorandum submitted herein to support the constitutionality of Article I, § 7(a); rather, they have merely advised the court that the interests of all parties will be served by

prompt resolution of the constitutional issues.

In light of the foregoing, the court finds that requisite legal adversity does not exist between plaintiffs and defendants Superintendent Riles and the members of the State Board of Education. *See Kremens v. Bartley, supra; Golden v. Zwickler, supra; League of Women Voters of California v. F.C.C.*, 489 F.Supp. 517 (C.D.Cal.1980). Accordingly, this action must be dismissed with respect to Superintendent Riles and the members of the State Board of Education.

For the reasons stated above, plaintiff's second amended complaint is DISMISSED as to all defendants named herein.

Having dismissed the complaint as to all defendants named in this action, and having previously afforded plaintiffs an opportunity to amend their complaint to name other defendants not subject to the jurisdictional bars herein discussed, and plaintiffs having failed to add any new defendants notwithstanding the court's extensive jurisdictional discussion in its order filed herein on July 25, 1980, and the court having considered the fact that plaintiffs face no statutes of limitations with respect to their claims, the court concludes that no purpose would be served by permitting plaintiffs to file a third amended complaint and, accordingly, hereby exercises its discretion, see *Mir v. Fosburg*, 646 F.2d 342 (9th Cir. 1980), and DISMISSES this action.

IT IS SO ORDERED.